## F. X. HOMET ET AL. v. R. S. BACON.

ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 18, 1889—Decided May 6, 1889.
[To be reported.]

(a) A testator's will dated in 1831, gave to his wife Cynthia, a life estate in a tract of land, and provided that after her decease, "the real estate afore-described should descend to the children issued from my marriage

with said Cynthia, and if she should survive them, or any of them, it is further my intention and purpose that the same should after her death and after the death of my children by her without any heirs revert to the male children issued from my first marriage or from the first bed and to their heirs."

(*b*) In 1838, the testator added a codicil which after referring to the death of his wife and making an additional provision out of personalty for his daughter Lydia, the only child of the last wife, proceeded, " hereby . . . . . confirming in favor of my daughter Lydia such parts of my real estate as I have by said will of March 1831 disposed of in favor of my wife Cynthia to revert after her death to her children if any."

(*c*) The testator died in 1839, leaving said Lydia to survive him, and leaving also male children by his first wife and descendants of such children; Lydia died in 1886, without issue living, but having conveyed the land in 1852 by deed acknowledged in open court under the act of January 16, 1799, 3 Sm. L. 338.

1. By the provisions of the original will quoted, a life estate was given to the widow, with a remainder to Lydia in fee, and the conveyance by Lydia in her lifetime passed the title in fee to her grantee.

2. The codicil, by its express language and plain meaning, operated simply to confirm the estate previously granted to Lydia by the will, and could not be construed to substitute for her a new or different estate from that previously devised.

3. If there were any doubt as to the meaning of the expression, " without any heir," in the will, there is as much reason for reading it " issue " as " children," and read in that way, the estate of Lydia would be at least an estate tail duly barred by the deed of 1852.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 263 January Term 1888, Sup. Ct.; court below, No. 660 May Term 1887, C. P.

On April 7, 1887, Francis X. Homet, J. G. Homet and others, brought ejectment against R. S. Bacon, to recover a tract of land in Asylum township. Issue.

At the trial on September 23, 1887, the following case was presented :

The plaintiffs showed the possession of the land in dispute, 99 acres and 76 perches, by the defendant, and then put in evidence a statement of facts agreed upon by the parties as the facts of the case, and which was as follows :

1. That the land described in the writ of ejectment in the above stated case was owned by Charles Homet in his life-

time; that he died seised of the same, and that said land is described and devised in his last will and testament, which was duly proved and recorded in the register's office at Towanda on May 15, 1839. Said will to be used in evidence.

2. That the persons named in the aforesaid writ of ejectment as plaintiffs, legally represent the male children issued from the first marriage or from the first bed of Charles Homet, the aforesaid testator, and their heirs.

3. That Lydia Homet was the only child of said Charles Homet by his second wife, Cynthia Homet, and was born July 26, 1829; that said Lydia was married to E. T. Fox on February 8, 1847; that she, Lydia, had one daughter who died before her mother, unmarried and without issue; and that Lydia Homet Fox, died on April 19, 1886; that Lydia Homet Fox with her husband, E. T. Fox, conveyed the land described in the writ to Hiram Gilbert and R. E. Gilbert by deed dated May 5, 1852, acknowledged in open court, in accordance with the act of January 16, 1799, 3 Sm. L. 338; that Hiram Gilbert et ux., conveyed his undivided one half part thereof to R. E. Gilbert, by deed dated July 13, 1857; that R. E. Gilbert et ux., conveyed the same to R. S. Bacon, the defendant in this suit, by deed dated January 1, 1873; the said conveyances or the record thereof to be used in evidence subject to the plaintiffs' objection that Lydia Homet Fox and E. T. Fox her husband could not convey a title to the land described, which is to be determined by the court; also that said grantees of Lydia Homet Fox and E. T. Fox entered into possession of the said land at the dates of their respective deeds and have continued in possession claiming ownership ever since.

The will of Charles Homet, dated March 16, 1831, and admitted to probate on May 15, 1839, in so far as essential to this case was as follows:

"It is my will also, and I do order and direct that my dear Cynthia [his wife] shall have during her natural life the use, occupancy and profits of such part of the farm whereon I am now living, as is hereafter described [describing it by courses and distances], but after my dear wife Cynthia Homet's decease, it is my will and desire that the real estate afore-described should descend to the children issued from my marriage with said Cynthia, and if she should survive them or any of them it is

further my intention and purpose that the same should after her death and after the death of my children by her without any heirs revert to the male children issued from my first marriage or from the first bed and to their heirs. . . . . "

In a second codicil to his will, dated December 22, 1838, the testator provided:

" Know all men by these presents, that I, Charles Homet, . . . . . wishing to provide for the welfare, liberal and decent education of my daughter Lydia Homet, in case that she survives me, have thought proper and reasonable to make in her favor, in addition to what she has right to claim by my will and testament of the 16th day of March, 1831, further dispositions in consequence of the premature death of Cynthia Homet, her mother, and as follows: It is therefore by my will and intention that after my death my daughter, Lydia Homet, should have all the household furniture, farming utensils, goods and chattels lying and being at the time of my death on the premises on which I am now living.

" I do publish and declare this to be my will and testament in addition to the one made the 16th March 1831, hereby ratifying whatever is by this added to the former and annulling whatever might be or is contrary to the disposal of my personal estate as mentioned in the former will confirming in favor of my daughter Lydia such parts of my real estate as I have by said will of March 16, 1831, disposed of in favor of my wife Cynthia Homet to revert after her death to her children if any."

The court, MORROW, P. J., instructed the jury to return a verdict in favor of the plaintiffs, subject to the question reserved, whether upon the facts in evidence the plaintiffs were entitled to recover.

On November 19, 1888, after argument by counsel, the court filed an opinion which after stating the facts, proceeded:

Under these facts the plaintiffs claim that Lydia took only a life estate, with a contingent remainder over to such children as might survive her ; that no child survived her, and the devise over to the sons of testator by his first marriage took effect, and the plaintiffs are entitled to recover. The defence is that Lydia took an estate in fee simple or an estate tail, and the plaintiffs cannot recover.

When the codicil was executed, Cynthia Homet was dead. The personal property which her husband had bequeathed to her, he bequeathed to Lydia by this codicil, and he said it was "in addition to what she had a right to claim by my will of March 16, 1831." Under that will his wife had a life estate in this land. He made no change in the devise to Lydia, except to say he confirmed in Lydia " such parts of my estate as I have by said will of March 16, 1831, disposed of in favor of my wife Cynthia, to revert after her death to her children, if any; " that is to say, to " revert," after Cynthia's death, to her children, if any. Lydia was the only child, and this expression indicates that the testator's construction of the devise in the will of 1831 was, that Lydia was to have the land absolutely. By that will the land was to descend to her (she was the only child by that marriage), and if the devise had ended there, she would have taken a fee simple, especially in the light of what is said in the codicil; but he said, " after her death, without any heirs," his intention was that the land should " revert to the male children issued from my first marriage." Whether Lydia left heirs, on her mother's side, does not appear; but one of the plaintiffs is her half brother, and some of the others are children of the other half brothers. So it cannot be said she died without heirs, and it may be said she died leaving heirs, and that the land descended to her in fee simple. It is true this may be called a technical interpretation, but if it is the correct one, it is an end to the plaintiffs' case. So, too, if she took it as a vested remainder, as claimed by the defendant's counsel, under McKee's Appeal, 96 Pa. 277, the plaintiffs have no case.

But construing the words, " without any heirs," to mean without issue, an indefinite failure of issue, she took an estate tail : Eichelberger v. Barnitz, 9 W. 447. The authority of this case is unquestioned. So, too, " child " may be construed " heir of the body," or " issue," to give effect to the testator's intention : Haldeman v. Haldeman, 40 Pa. 29. In Covert v. Robinson, 46 Pa. 274, the devise was to testator's daughters, " but if my daughter Nancy should be called away by death without any lawful heir," then her share to go to the other daughters ; held, these words meant, if she died without issue, indefinite failure of issue, and she took an estate tail. See also Allen v. Markle, 36 Pa. 117. But aside from this, if as plaint-

iffs claim, the devise was to Lydia and her children, or issue, and that she took for life with contingent remainder to such children as might survive her, it was an estate tail; "for she had no issue at the time of the devise, and the intent of the deviser was manifest and certain that her children or issue shall take, and as immediate devisees they cannot take, because they are not in rerum natura, and by way of remainder they shall not take, for this was not his intent, for the gift was immediate; whereupon such words shall be taken as words of limitation:" Taylor v. Taylor, 63.Pa. 488.

Lydia, at the date of the codicil, was nine years old; her mother was dead, and evidently she was the primary object of her father's solicitude and bounty, and her absolute estate is not to be cut down to an estate for life without clear evidence of such intent: Mickley's Appeal, 92 Pa. 514. Such an intent is not apparent. The words in the will, "without any heirs," are words of limitation, indicating an indefinite failure of issue. She took an estate tail, and it having been barred under the act of assembly, the defendant took and has a title in fee simple.

And now, November 19, 1887, judgment on the point reserved, for the defendant, non obstante veredicto.

Judgment having been entered for the defendant, the plaintiffs took this writ, assigning as error the entry of judgment for the defendant, on the point reserved, non obstante veredicto.

*Mr. Thos. J. Ingham* (with him *Mr. E. P. Ingham, Mr. Wm. T. Davies* and *Mr. L. M. Hall*), for the plaintiffs in error:

1. A codicil to a will may be complete in itself as to a particular devise, and then we look to that alone for the intent of the testator. When, however, as in this case, the codicil, so far as relates to the land in controversy in this suit, merely confirms the estate as devised in the original will, the codicil and will must be deemed one instrument and the intent of the testator gathered from the language used in both: Alsop's App., 9 Pa. 374. What then was the intent of Charles Homet as expressed in the original will? Technically expressed, there was a life estate in Cynthia, a life estate in Lydia, with remainder to the children of Lydia contingent on their birth, and a vested remainder over to the male children of Charles Homet, by his

first wife, should Lydia die without living children : Williams on Real Prop., 268.

2. " Undoubtedly the word, heirs, may be shown by the context to have been used in the sense of sons, daughters, children, etc. ; and when it is so used the rule in Shelley's Case is inapplicable : " Guthrie's App., 37 Pa. 12. We look then to the will itself to ascertain the sense in which the testator used the word, and it must be borne in mind that the meaning of particular words must be construed in accordance with the whole scheme of the will : Middleswarth v. Blackmore, 74 Pa. 418. That the testator used the word, heirs, in the sentence, " after the death of my children by her without any heirs," in the sense of " without any " children, is apparent from the next provision which in that event gives the land to his male children by his first wife. It would be impossible for him to contemplate the death of Lydia " without any heirs," whilst his male children by his first wife, and their heirs, were in existence ; yet the death of Lydia without any heirs was the contingency upon which the estate was to pass to these very children. This would be a most absurd provision : Berg v. Anderson, 72 Pa. 90.

3. Another reason which shows that the testator meant child, or children by the word, heir, is that the whole scheme of the will proves that the testator had two leading thoughts when making the will. First, he desired to make ample provision for the support of his wife and daughter : second, he desired the Homet farm to descend to his children or grandchildren. He therefore provides for his wife a life use and occupancy of the farm, and gives her a large quantity of personal property absolutely. When his wife dies it is his thought and care to provide for his daughter Lydia. The whole tenor of the will indicates that the testator was looking ahead, considerately, to make a safe and sure provision for Lydia as long as she lived. The personal property she might spend or squander ; the income of the farm was sure for her life. After her death what then ? To her children, if any. If she died childless, what then ? To the male children by the first marriage. A scheme clear, reasonable, provident, consistent and harmonious.

4. In wills, as a rule, the words, heirs, and, heirs of the body, are construed to be words of limitation and not words of pur-

chase. The word, issue, is susceptible of either construction, depending upon the general context of the will. The words, child, and, children, are as a rule construed to be words of purchase. Cases can be found where the words, heirs, and, heirs of the body, are construed as words of purchase, and also where, child, and children, have been construed as words of limitation; but these cases depend upon other language used by the testator clearly showing that the words were used with that intention: Guthrie's App., 37 Pa. 16; Yarnall's App., 70 Pa. 342; Gernet v. Lynn, 31 Pa. 98. These cases and many others show that the intent of the testator must govern, and we rely upon this principle, when applied to the manifest intention of our testator.

*Mr. D'A. Overton* (with him *Mr. B. M. Peck*), for the defendant in error:

1. From an inspection of the will it is apparent that his daughter Lydia was the primary object of the testator's bounty, and hence, after the decease of his wife, Cynthia, her mother, "it is my will and desire that the real estate afore-described should descend to the children issued from my marriage with said Cynthia." If there was nothing further in the clause in question, it is conceded that Lydia, on the death of her mother in 1838, under the provisions of the act of 1833, would have taken the fee; thus providing a life estate for his wife, with a vested remainder in fee to Lydia, if she survived her mother; the devise to take effect in possession after her mother's death, subject to open and let in other children, if any were born to him by his wife Cynthia: Gernet v. Lynn. 31 Pa. 94; Chew's App., 37 Pa. 23; Fetrow's Est., 58 Pa. 424. But, after making this provision for the daughter, it seems to have occurred to the testator that possibly the mother might outlive the daughter, or any other children he might have by her, and he therefore added the words, "and if she (Cynthia) should survive them or any of them it is further my intention and purpose that the same should revert . . . . . to the male children issue from my first marriage."

2. To construe the clause in the second codicil, "to revert after *her* death to *her* children," as referring to Lydia, is to change and distort the sentence from its grammatical construc-

tion and plain and obvious meaning. "The question in expounding a will, is not what the testator meant, but what is the meaning of his words." If the will contain the proper and technical words for creating an estate tail, they must have their effect irrespective of the intent of the testator: Phila. Trust Co.'s App., 93 Pa. 209. The testator, in the codicil, does not profess to change in any manner the devise of the real estate, but simply confirms in favor of Lydia what he had before given her in his original will, and then narrates what he had done, to wit: "disposed" of it "in favor of my wife to revert after her death to her children if any," that is if they survived her.

3. Suppose, however, we concede, for the purpose of the argument, that the devise in the will and the limitation over, were not dependent upon the mother's surviving the daughter, how would it support the contention of the plaintiffs? The death of the mother, the tenant for life of the particular estate of freehold capable of supporting the remainder, before the testator, did not affect the devise of the remainder to Lydia: Goddard v. Goddard, 10 Pa. 79. We would then have either a devise in fee to Lydia, which by a subsequent condition, providing "she died without any heirs," converted it into an implied estate tail, with a limitation over, either as a remainder or as an executory devise; and in either event the limitation over would be barred by the deed of May 5, 1852, and this whether the remainder is vested or contingent: Taylor v. Taylor, 63 Pa. 486. It will not be construed to be an executory devise, if it will admit of any other construction: Doe v. Provoost, 4 Johns. 61; 2 Redf. on Wills, § 643.

4. Covert v. Robinson, 46 Pa. 274, rules the present case. There a testator devised to his daughters, "all my real estate . . . . . equally divided amongst them; but if my daughter N. should be called away by death without a lawful heir, then I order her share of said estate to be equally divided between my daughters S. and R." After proceedings to bar the entail, on a case stated it was held that by the will N. took an estate tail which by virtue of the subsequent conveyances became an estate in fee. The first taker is always the first object of the testator's bounty, and his absolute estate is not to be cut down to an estate for life without clear evidence of such intent: Mickley's App., 92 Pa. 514; Eichelberger v. Barnitz, 9 W. 447. Whe-

ther, therefore, the limitation over be construed as (1) wholly dependent upon the mother's surviving the daughter, Lydia, according to the strict letter of the will; or (2) as a remainder limited upon an estate tail; or (3) as an executory devise, the judgment of the court below should be sustained.

OPINION, MR. JUSTICE GREEN :

We are quite unable to discover any difficulty as to the character of Lydia Homet's estate in the land in question, under the will of her father. The operative words of the will are: "It is my will also and I do order and direct that my dear Cynthia shall have during her natural life the use and occupancy and profits of such parts of the farm whereon I am now living as is hereafter described," (then follows a full description). "But after my dear wife Cynthia Homet's death it is my will and desire that the real estate afore described should descend to the children issued from my marriage with said Cynthia." It is beyond all question that these words gave a life estate to the wife Cynthia, with remainder in fee to the children of the testator and his wife Cynthia. It would be a waste of time to discuss so simple a question.

But it is argued for plaintiffs in error that the further words of the will, in connection with the facts as they transpired, reduced this remainder in fee to a life estate with an ultimate remainder in fee to the testator's male children by his first marriage. These further words follow in immediate connection: "And if she should survive them or any of them it is further my intention and purpose that the same should after her death and after the death of my children by her without any heirs revert to the male children issued from my first marriage or from the first bed and to their heirs." It is claimed that under these words the children of the testator and Cynthia took only a life estate with remainder in fee to the male children of the testator by his first wife. This would certainly be so if the conditions upon which this disposition was based had transpired, but they never did. In point of fact the testator and Cynthia had but one child, Lydia, and she survived both her father and her mother. Cynthia died before the testator. Charles Homet, the testator, died about 1839, and Lydia did not die until 1886. In this state of facts Lydia fulfilled to the

letter the conditions upon which the land in question was given to her in fee. She was a child, the only child of the testator and his wife Cynthia. Her mother died and after her father's death the land became hers literally and absolutely, unless it was divested by the remaining clause, or some other clause, or part of the will or codicils. The remaining clause above quoted is principally relied upon to convert Lydia's fee into a life estate. Now the first and most important condition necessary to work this change was that the wife, Cynthia, should survive her child or children. The words are, "and if she should survive them or any of them it is my further intention and purpose," etc. But she did not survive them. She died about fifty years before Lydia died and Lydia was her only child. How then is it possible to take from Lydia the clear estate in fee simple which the will gave her, upon the theory that an event happened which never did happen?

But again; another insuperable obstacle in the way of the male children of the first wife is, that before any interest in them could arise it was essential that Lydia should die "without any heirs." In point of fact she did not die without any heirs. She left an abundance of them, not children it is true, but heirs nevertheless. It is idle to discuss the situation in which the word "heirs" may be construed to mean "children" or "issue" or even "devisees" or "distributees." Those are cases where it is necessary, in order to give interpretation to doubtful wills, where the meaning is obscure, where the will cannot take effect without attributing another than a technical meaning to the word. But here there is no such difficulty; there is absolutely not the least ambiguity, any more than there would be in case of a devise to one "and his heirs." Most certainly the law will not be astute to take away from a child a clear fee simple estate and reduce it to a life estate, by a forced and ingenious and strained process of reasoning, the foundation of which is that where a will can only become operative, according to the testator's intent, by giving to the word heirs a limited or special meaning such as "children" or "issue," such a construction will be given.

Again in one of the codicils an expression occurs which is invoked in favor of the male heirs by the first wife. The words are, "confirming in favor of my daughter Lydia such parts of

my real estate as I have by said will of March 16, 1831, disposed of in favor of my wife Cynthia Homet to revert after her death to her children if any." It is argued that the words "to revert after her death to her children if any," refer to Lydia and her children, and as she had none her estate was a life estate only. It is perhaps enough to say that it is impossible to read these words in that way without doing violence not only to the grammatical structure of the sentence but to the plainest and most obvious meaning of the words. The whole of the clause is at best a mere reference to the previous disposition of the will, and does not pretend to be the substitution of new testamentary language creating a new or different estate. But just as it is, the express language and the plain meaning are, to simply confirm the estate of Lydia previously granted by the will, and when in describing that estate, that is Lydia's estate, he says, "disposed of in favor of my wife Cynthia Homet to revert after her death to her children if any," he unquestionably refers to Cynthia Homet's children and Cynthia Homet's death. The antecedent of "her" is Cynthia Homet and in no possible sense Lydia. Again if there were any doubt as to the meaning of the expression "without any heirs" in the will, there is just as much reason for reading it "issue" as "children," and read in that way the estate of Lydia would be at the least an estate tail, which was duly barred by the deed of 1852 to the Gilberts.

We are of opinion that Lydia took an estate in fee simple which has duly passed to the defendant, and therefore

The judgment is affirmed.