## Linn et al., Appellants, *v.* Bowman.

*Wills—Construction—Residuary clause—Devise of real estate—Ejectment.*

In an action of ejectment the title to the land in question was claimed by the defendant under the following residuary bequest in the will: "I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to Frank Hoenshell's heirs, to have and to hold to their heirs and assigns forever." Frank Hoenshell was living at the date of the death of the testatrix. The plaintiffs claimed that a devise to the heirs of a person, living at the time of the death of the testatrix is meaningless, and identifies no individual or class of persons who could take title under such a devise.

*Held:* That the word heirs could be used interchangeably with children to carry out the clearly expressed intention of the testatrix.

When it is necessary to effectuate the clearly expressed intention of a testatrix the word "heirs" may be construed as if the testatrix had written children; and where the will must be substantially cast aside and the intent of the testatrix overthrown, unless the word can be given such effect, the courts will not hesitate to so interpret it.

Argued April 13, 1921. Appeal, No. 133, April T., 1921, by plaintiffs, from judgment of C. P. Somerset Co., Sept. T., 1920, No. 265, on verdict for defendant in the case of Clara Mae Linn and Susan House v. Millard Bowman. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Ejectment for a certain lot of ground situated in Boynton, Somerset County, Pennsylvania. Before BERKEY, P. J.

262      LINN et al., Appellants, *v.* BOWMAN.

The facts are stated in the opinion of the Superior Court.

Verdict for defendant and judgment thereon. Plaintiffs appealed.

*Error assigned,* among others, was the refusal of plaintiffs' motion for judgment non obstante veredicto.

J. C. *Lowry,* and with him *Alexander King,* for appellants, cited: Bank v. Hartmen, 8 Pa. Superior Ct. 170; Morris et al. v. Stephens et al., 46 Pa. 200; Brendlinger v. Brendlinger, 26 Pa. 131; Guthrie's App., 37 Pa. 9.

*Clarence L. Shaver,* for appellee, cited: Braden v. Cannon, 24 Pa. 168; Homet v. Bacon, 126 Pa. 176; Cox. v. Beltzhoover, 11 Mo. 142; Harris v. Ingalls et al., 74 N. H. 339; Wilson et al. v. Gaston et al., 92 Pa. 207; McCort's App., 2 Out. 33; Warfield v. Fox, 3 P. F. Smith 382; Cochran v. Young, 104 Pa. 333; Broe v. Boyle, 108 Pa. 76; Wettach v. Horn, 201 Pa. 201; Opp v. Chess, 204 Pa. 401; Stout v. Young, 217 Pa. 427; Bunce v. Galbrath, 268 Pa. 389.

OPINION BY HEAD, J., July 14, 1921:

The action was ejectment. Both parties claim under Catharine Hoenshell, deceased, who thus becomes the common ancestor in title. The plaintiffs, who are her next of kin, rest their case on the proposition that as to the locus in quo she died intestate. The defendant contends that the will, executed by the said Catharine in her lifetime and duly admitted to probate after her death, disposed of her entire estate and vested the title to the premises in dispute in those from whom he purchased. The trial judge held with the defendant that the will was effective in law to carry the title to those from whom the defendant purchased and directed a verdict for the defendant upon which judgment was afterwards entered. This appeal followed.

Catharine Hoenshell died in June, 1904, and the will which was afterwards admitted to probate was dated March 28, 1904. In that will she made a special bequest of one dollar to each one of the two plaintiffs. Then followed the clause which gives rise to the dispute in the present case and we quote it in full. "I give, devise and bequeath all the rest, residue and remainder of my estate, both real and personal, to Frank Hoenshell's heirs, to have and to hold to their heirs and assigns forever." It appears on the record as an admitted fact in the case, that "at the date of the death of Catharine Hoenshell the following children of Frank Hoenshell were in full life and being and yet are in full life and being and constitute his only children, to wit," (then naming the children). It further appears that the testatrix never had any children and that Frank Hoenshell, referred to in the will, was the brother of her husband. The contention of the appellants is based on the ancient maxim that no one is the heir of a person in full life and that, as a consequence, a devise to the heirs of a living person is meaningless and identifies no individual or class of persons who could take title under such a devise. Or, to state it otherwise, that even if we concede the testatrix had a fully formed intention of devising the land in dispute to the children of Frank Hoenshell, she failed to express that intention in her will and therefore those children took nothing under it.

Casting aside for the moment any canons of construction or general legal principles that are often crystallized into what we call maxims, let us consider briefly what is disclosed by the language of the will itself, as that language would be understood in the common speech of the people. First of all, it is plain enough from the specific bequests made to the two plaintiffs that it was not the intention of the testatrix they should take any more of her estate than is indicated by those bequests. It is also apparent from the form of the will that she did not intend to die intestate as to any part of her estate, and having undertaken to dispose of it by

will, the law raises a presumption against any intent to die intestate as to any portion of her property. It is a fair presumption again, from the language of the will, that she knew the brother of her husband; that he was in full life when she made the will, and that he was the father of a number of children. In the absence of any statute authoritatively declaring the legal meaning of the word "heirs" in such a will; or of a rule or principle of the common law so fixed and unbending as to have become a rule of property unchangeably fixing the meaning of that expression, there would be little room for doubt in the mind of a layman as to the meaning and intention of the testatrix. It is a frequent occurrence, at least in the rural counties of the State, and perfectly well known to every citizen of mature years, that lands are identified and recognized as belonging to the "Smith heirs." They are thus assessed for taxation purposes, and the sufficiency of such an assessment, so far as the writer's knowledge goes, has never been questioned.

Now it is certain there is no statute which forbids the construction of the word "heirs" adopted by the trial judge, and it is equally clear that from early times an individual has been properly designated as the heir of one then living. We are indebted to the research of the learned counsel for the appellee for the information that in the English statute 25th Edward III, it is declared to be treason "to kill the heir of the king." That was at a period when the human mind revelled in subtle distinctions and all of the niceties of the law of feudal tenures were in full flower. Nevertheless, the sturdy sense of justice and right, which has always characterized the work of most of our great jurists, has constantly compelled the conclusion that the controlling element in every will is the ascertainment of the real intent of the testator. Therefore the general statements of legal principles are not always to be given a rigidly technical meaning in any and every case.

So it was well said by GIBSON, C. J., in Hileman v. Bouslaugh, 13 Pa. 351: "A devisor who uses words of

limitation in an improper sense, may so explain the meaning of them by other words in the context, as to exclude his devise from the rule; for it operates only on the intention, when it has been ascertained, not on the meaning of the words used to express it." In Harris et al. v. Ingalls, 74 New Hampshire 339, the court was dealing with a case evidently almost identical with the one at bar, "All the residue and remainder of my property, real, personal and mixed, I order my executors to divide into four equal parts and I give and bequeath one part thereof to the legal heirs of my mother's brother, Benjamin Ingalls, to be equally divided among them." In construing this clause of the will, the Supreme Court declared: "The 'legal heirs' intended are those persons who answered that description at the time of the testator's death. There were no persons who, strictly speaking, were 'legal heirs' of Benjamin Ingalls at that time for he was then living. In view of the fact that the testator evidently intended to dispose of all of his estate by the will, it is apparent that he used the words 'legal heirs,' so far as they relate to Benjamin, in a sense different from their strict technical sense. It is not a very uncommon thing for a person to speak of the children or other near relatives of a living person as his heirs; and in this instance the words manifestly refer to the persons who would be the legal heirs of Benjamin at the time of the testator's death in case Benjamin was then dead." Many cases cited.

Expressing, as it does, what seems to us to be both the logic and the justice of the case, it is difficult to escape the conclusion reached by that court. But it is not necessary to go so far afield. In Braden v. Cannon, 24 Pa. 168, Mr. Justice WOODWARD, in considering the expression "legal heirs," as used in the will, said: "The expression 'legal heir,' therefore, cannot be construed heirs generally, but must mean heir of the body or child. To effectuate the clear intention of the testator, we habitually construe the words heirs, issues, children, in-

terchangeably.   A devise to a man and his children, or issue,, or even without any words of limitation whatever, are held to pass the fee when such intention is apparent from the whole will construed by its four corners; and, on the same principle (the intention of the testator) the word heir may be controlled and reduced from its genuine sense to the significance of children or issue." So in Homet v. Bacon, 126 Pa. 186, Mr. Justice GREEN seems to recognize the situation now before us as one justifying the construction of this will adopted by the court below.   "It is idle to discuss the situation in which the word 'heirs' may be construed to mean 'children' or 'issue' or even 'devisees' or 'distributees.'   Those are cases where it is necessary, in order to give interpretation to doubtful wills, where the meaning is obscure, where the will cannot take effect without attributing another than a technical meaning to the words."

Without further elaborating then, we have before us a case where the owner of land certainly undertook to dispose of it by will.   We have the strong presumption of the law in such cases against any intent on the part of such testator to die intestate as to any part of the estate. We have clearly the expressed intent of the testatrix as to the extent to which she intended her next of kin, the present plaintiffs, should participate in her estate.   We have at least an attempted devise of the locus in quo to a class of persons then, and at the time of her death, undoubtedly in being; and we have that class designated by the use of language easily and perfectly understood in the common speech of the people.   We have, as we have attempted to show, ample authority for the proposition that when it is necessary to effectuate the clearly expressed intent of a testator, the word "heirs" may be construed as if the testator had written children; and where the will must be substantially cast aside and the intent of the testator overthrown, unless the word can be given such effect, the courts will not hesitate to so interprete it.

261, (1921).]        Opinion of the Court.

Upon a consideration of the whole case, we are of opinion the court below reached the correct conclusion and the assignments of error must therefore be dismissed.

Judgment affirmed.