## Bechtel, Exr., *v.* Fetter, Appellant.

*Wills—Construction—Intent — Technical rules — Precedents — Gift of income of land—Gift of principal.*

1. It is the intention of a testator that must govern, if that can be satisfactorily derived from the language used. This is the first test to be applied, and until that has failed, nothing can be gained by the application of artificial and technical rules; nor will it aid in searching for the intention, to have recourse to precedents, since each will is its own best interpreter, and the construction of one is no certain guide as to the meaning of another.

2. The rule that a gift of income or profits of land will carry an absolute estate in the principal, was never intended as an aid to develop the intention of the testator, but only to supply a legal intendment when, from the will itself, no inconsistent or contrary intention can be derived. If the intent clearly appears to carry the corpus or principal over to others, the words of the will must be permitted to have their proper force.

3. Where a testatrix, leaving to survive her a son with children, and a grandson, a child of a deceased son, directs that the grandson shall receive $5 out of her personal estate, and gives her son the remainder of her personal estate, and further directs that her real estate shall not be sold during the lifetime of her son, but that the rents and profits shall go to the son, who is given power to lease and collect rents from the same, and is directed to pay the grandson $8 per month from such income as long as the son lives, and when the son dies the grandson "shall receive the same as one of the heirs of my son, that is share and share alike; and if my grandson dies without heirs, then his share shall fall back to my son or his heirs after the death of my son," and by codicil she directs that the grandson shall have no part of her estate except the $5 given him by the will, the son takes a life estate only, and not a fee in the real estate of which his mother died seized.

174    BECHTEL, Exr., *v.* FETTER, Appellant.

4. In such a case, while a gift of the rents and profits of the real estate, standing alone, would give the son a fee simple in the real estate, the later provisions of the will indicate that it was the intention of the testatrix to place the grandson in the same position with respect to the real estate as the children of the son would naturally be, who, as children, would be the heirs of their father, upon his decease, receiving the title of their father in equal shares. While there was no gift over upon the death of the son, there was a devise over by implication to the heirs or children of the son. The revocation by the codicil of the share of the grandson in the will, is without significance.

Argued March 2, 1920. Appeal, No. 257, Jan. T., 1920, by defendant, from judgment of C. P. Berks Co., Sept. T., 1919, No. 34, for plaintiff, on case-stated, in suit of William B. Bechtel, Executor of Jacob A. Phillippi, alias Jacob A. R. Phillippi, v. Horace P. Fetter. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Case-stated to determine marketability of title to real estate. Before WAGNER, J.

The facts are stated in the opinion of the Supreme Court.

The court below entered judgment for plaintiff on the case-stated. Defendant appealed.

*Error assigned* was entry of judgment for plaintiff.

*Joseph R. Dickinson,* with him *M. Bernard Hoffman* and *John B. Stevens,* for appellant.—It is submitted (1) that the first provision of the will does not give an absolute estate; and (2) if it be conceded that the first provision does give an absolute estate, the subsequent provisions, by a clearly expressed intention, reduce that estate to a life estate: Wood v. Schoen, 216 Pa. 425; Yarnall's App., 70 Pa. 335; Doebler's App., 64 Pa. 9; Lauer v. Hoffman, 241 Pa. 315; Folweiler's App., 102 Pa. 581; Reisher's Est., 261 Pa. 223; Beilstein v. Beilstein, 194 Pa. 152; Rupp v. Eberly, 79 Pa. 141; Strie-

wig's Est., 169 Pa. 61; Livezey's App., 106 Pa. 201; Elliott v. Diamond C. & C. Co., 230 Pa. 423; Shower's Est., 211 Pa. 297.

*W. B. Bechtel,* for appellee.—The first taker is entitled to the benefit of every implication, that his estate will not be cut down unless the intention to do so clearly appears: Folweiler's App., 102 Pa. 581; Robinson v. Jones, 222 Pa. 56; Hall v. Dean, 72 Pa. Superior Ct. 599.

OPINION BY MR. JUSTICE STEWART, April 12, 1920:

The case-stated recites the following facts agreed upon by the parties, and submitted for determination by the court on the law governing. By article of agreement dated August 14, 1919, Jacob A. Phillippi, since deceased, and whose legal representative is the plaintiff in the case, covenanted to sell and convey to Horace P. Fetter certain real estate therein described, situate in the City of Reading, at and for the price of $3,900. Pursuant to this contract, the said Jacob A. Phillippi subsequently tendered to Fetter a deed for the premises, sufficient and correct in form, in which his wife joined, and demanded the stipulated purchase money. Fetter declined acceptance claiming that the deed did not convey a fee simple title, Phillippi having no larger interest in the premises than an estate for life. This states the only question to be resolved.

Whatever interest the said Jacob A. Phillippi had in the premises he had acquired under the will of his mother, Henrietta S. Johnston, who died seized of the premises in fee simple, a widow and testate, September 18, 1895, leaving to survive her no other descendants than said Jacob A. Phillippi and a grandson, Elmer, son of Philip A. Phillippi, who died in 1885. The said Jacob A. Phillippi survived his mother and died September 21, 1919, leaving children to survive him. So much of the will of the said Henrietta S. Johnston, made July

19, 1893, and probated September 18, 1895, as is material, reads as follows: "It is my will that Elmer Phillippi, my grandson, shall receive Five Dollars out of my personal estate, and the remainder of my personal estate, after paying debts, funeral expenses, tombstones, etc., shall go to my son, Jacob A. Phillippi. Item. I direct that my real estate shall not be sold so long as my son Jacob A. Phillippi lives and that the rents and profits shall go to my son Jacob A. Phillippi from all my estate I am possessed of at the time of my death, and that my son Jacob A. Phillippi shall have the right to lease properties and collect rent from same; but I order that my son Jacob A. Phillippi shall pay over to my grandson Elmer Phillippi the sum of Eight Dollars per month right after my death, which money shall be taken from the income of rents of my properties so long as my son Jacob A. Phillippi lives; but in case my son Jacob A. Phillippi should die, the said Elmer Phillippi shall receive the same as one of the heirs of my son Jacob A. Phillippi, that is, share and share alike; but if my grandson Elmer Phillippi dies without heirs, then his share shall fall back to Jacob A. Phillippi or his heirs after the death of my son Jacob A. Phillippi." By codicil to the will the provision therein made for the grandson Elmer was revoked, and testatrix there directed that he should have no part of her estate except the $5 given him by the will. This having been paid him, he is without interest in the present controversy; but since by the original will he was made beneficiary to a larger extent, and associated in some degree in the devise of the real estate, it may be that the provision as to him, though revoked, may afford some light as to the governing intent of the testatrix in the disposition she made of the real estate. It therefore calls for consideration here.

It is the intention of the testatrix with respect to the disposition of her real estate, if that can be satisfactorily derived from the language used, that must govern. This is the test that is first to be applied, and until that has

failed we gain nothing by the application of artificial or technical rules, nor would it aid in searching for testatrix's intention, to have recourse to precedents, since each will is its own best interpreter, and a construction of one is no certain guide as to the meaning of another. "Precedents in the construing of a will, except as to technical or quasi-technical phrases in the creation of trusts, or limitations of estates, where they tend to become rules of property, are of little value. The same words may be used by different testators, and yet in their context, or in their connection with the other parts, they may have widely different meanings. Wills, like contracts, must be read according to the intent of their makers and rules of construction are useful only as aids to the ascertainment of the actual meaning. When that is clear, no rule or method of construction can be permitted to override it": Penney's Est., 159 Pa. 346.

The learned judge of the court below, with too great dependence, as we think, upon technical rules of construction, derives from the first clause of the will,—which directs the rents and profits from all the real estate shall go to her son Jacob A., who shall have the right to lease properties and collect the rents from the same,—a gift to Jacob A. of the land in fee simple, a conclusion clearly warranted under all our authorities, provided, however, that a contrary intent or an intent to give a less estate cannot, without doing violence to the language of the will, be derived. The rule here applied, namely, that a gift of income or profits of land will carry an absolute estate in the principal, was never intended as an aid to develop the intention of the testator, but only to supply a legal intendment when from the will itself no inconsistent or contrary intention can be derived. "That a bequest of income or profits will carry an absolute estate in the principal or corpus of the estate in some cases, is well settled," says AGNEW, C. J., in Bentley v. Kauffman, 86 Pa. 99, "but," he adds, "the ground of such conclusion in such instances is that no contrary intent of the testa-

tor appears to sever the product from its source, and the fruits therefore carry with them that which bears them. ......Hence, when the intent clearly appears to carry the corpus or principal over to others, the words of the will must be permitted to have their proper force." True, the learned judge in the court below states very explicitly that he derives his conclusion that a fee simple was given to Jacob A. from the earlier part of the first clause of the will which gives to Jacob A. the rents and profits from all the real estate of which the said testatrix shall be possessed at the time of her death. He says, "by this clause, standing alone, he [Jacob] would have received the rents and profits of the estate, with power to lease and collect the rent. That is, there is an estate here given to Jacob A. of the rents and profits, not merely during his lifetime, but they are given to him absolutely without words of limitation or any devise over of the property." He distinctly recognizes the fact that the first clause that he relies upon does not stand alone, but that it is attempted to be qualified by what immediately follows, part of the same sentence, namely, "but I order my said son Jacob A. Phillippi shall pay over to my grandson Elmer Phillippi the sum of Eight Dollars per month right after my death, which money shall be taken from the income or rents of my properties so long as my son Jacob A. Phillippi lives; but in case my son Jacob A. Phillippi should die, the said Elmer Phillippi shall receive the same as one of the heirs of my son Jacob A. Phillippi, that is, share and share alike; but if my grandson Elmer Phillippi dies without heirs then his share shall fall back to Jacob A. Phillippi or his heirs after the death of my son Jacob A. Phillippi." If the construction placed on this part of the will by the learned judge is correct, and we are of opinion that it is entirely correct, and gives a true interpretation of the express intention of the testatrix therein, then it is in direct variance with the final conclusion reached by the court below and requires a reversal of the judgment entered in the

case, since the judgment rests on the conclusion that by the will the son, Jacob A. Phillippi, acquired a fee simple in the land devised. What could be more inconsistent with a purpose to give the first taker an estate of inheritance than a gift over to another upon his death? We quite agree that when the testatrix in the clause referred to uses the words "of the same," and "share and share alike," she had in mind the real estate, and that her intent was to place Elmer Phillippi, the son of her deceased son, in the same position with respect thereto as the four children of Jacob A. Phillippi would naturally be, who as children would be the heirs of their father upon his decease, receiving the title of their father in equal shares. While there is here no express gift over upon the death of Jacob A., yet we think it abundantly clear that as much was intended and that there was a devise over by implication to the heirs or children of Jacob A.: Beilstein v. Beilstein, 194 Pa. 152; Reisher's Est., ib., 261 Pa. 223.

The revocation by codicil of the share or interest given to the grandson Elmer in the will is without significance here. Instead of allowing the devise over to Jacob A. its true and legal effect, the learned court treated it as though it amounted to no more than a vain attempt on the part of the testatrix to cut down the fee given to Jacob A. under the first clause, under intendment of law. This was error. No fee was there given and none could have been derived therefrom except by intendment of law, and then only as the clause, which it is argued conferred a fee, "stood alone," that is, was not followed by any words which necessarily implied a devise over on the death of the first taker.

The final conclusion of the court below was that Jacob A., under the will and codicil of Henrietta S. Johnston, acquired a fee simple to all her real estate, and directed judgment on the case-stated for William B. Bechtel, executor of Jacob A. Phillippi, deceased, and against Horace P. Fetter, for the sum of $3,900, which was ac-

cordingly entered. When entered, this appeal was taken, and the error assigned was the entry of such judgment.

Judgment is reversed, and judgment is now entered for the defendant in the case-stated, with costs.