# List's Estate.

*Constitutional law—When question of constitutionality will not be considered—Parties.*

1. Where all possible interests are represented, and they expressly declare they do not question the constitutionality of a statute under which the proceedings are had, ordinarily the courts will not consider that point.

*Declaratory judgments—Act of June 18, 1923, P. L. 840—When act should not be invoked.*

2. The Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, was not intended for, and should not be invoked in cases where the judgment sought can be had as expeditiously in the ordinary course of legal procedure as it can under the statute.

*Wills—Gift of income—Remainder—Issue.*

3. When the income of an estate is given to one person, for a period which must certainly end, and there is no gift of it in remainder, save in the event of the first taker dying without issue before the expiration of the particular estate, and in fact he survives that time, or if the particular estate is for his own life and he leaves issue him surviving, then a gift in remainder will be implied in favor of him or his issue, as the case may be.

Mr. Justice KEPHART dissented.

Argued March 23, 1925. Appeal, No. 22, March T., 1925, by DeLoss Leroy List et al., from declaratory judgment of O. C. Butler Co., Sept. T., 1924, No. 148, in estate of Joshua M. List, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Petition for declaratory judgment as to parties entitled under will. Before HENNINGER, P. J.

The opinion of the Supreme Court states the facts.

Judgment as prayed for. DeLoss Leroy List et al., decedent's sons, appealed.

*Error assigned* was judgment, quoting it.

*John H. Wilson,* with him *Jackson & Troutman,* for appellants.—Prima facie the first taker is the favorite of the testator and the principal object of his bounty; and, in doubtful cases, the law leans in favor of making the gift to him as effectual as possible, and in favor of the first rather than the second taker: Watson v. Smith, 210 Pa. 190; Barrett's Est., 22 Pa. Superior Ct. 74; Grim's App., 89 Pa. 333; Wilson v. McKeehan,

53 Pa. 99; McFarland's App., 37 Pa. 300; Rewalt v. Ulrich, 23 Pa. 388.

*James E. Marshall,* of *Marshall & Watson,* with him *Painter & Painter* and *Zeno F. Henninger,* for appellee, cited: Bender v. Bender, 226 Pa. 607.

OPINION BY MR. JUSTICE SIMPSON, April 13, 1925:

This appeal is from a judgment entered upon a petition filed under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840. All possible interests were represented at the argument below and here, and they expressly declared they did not question the constitutionality of the statute; hence, for the reasons given in our opinion in Aaron v. Woodcock, 283 Pa. 33, we will not ourselves do so.

We are at a loss to understand why there was supposed to be any necessity for this proceeding. The only question raised is: Are the children or grandchildren of testator entitled to the corpus of his residuary estate in remainder, after the death of his widow? The petition, which was presented by the surviving executor, states that he had filed his account, which had been confirmed and showed a balance for distribution. If that proceeding had gone forward in due course, the point above referred to would have been decided, at least as expeditiously as it can be in this proceeding, by an interpretation of the same clauses of the will as we are now asked to construe. That was the normal course to pursue, and this is an unusual one, provided for the purpose of having issues speedily determined, which otherwise would be delayed, to the possible injury of those interested, if they were compelled to await the ordinary course of judicial proceedings. No other substantial reason existed for the passage of the statute, and hence where, as here, there was no necessity for resorting to it, it should not have been employed. As this is the first time such a status has appeared, and the only result of

reversing the judgment below and quashing the proceedings, as we might well do, would be a second appeal to this court, after a decree of distribution on the executor's account, we shall decide the case on its merits. We do not propose, however, to allow the statute to be used hereafter, in cases clearly aside from its obvious purpose.

This is a case of "the jolly testator who makes his own will," with the expected litigation resulting. After the usual clauses (though somewhat unusually expressed), regarding the payment of his debts and funeral expenses, and providing for the marking of his grave, testator made certain bequests, including $3,000 to each of his three sons, and then directed the residue of his estate to be held in trust, upon the following terms and conditions:

"8th. I direct my executors or trustees to pay to my wife one-third of the income from that part of my estate which I have placed in trust, so long as she remains my widow, the remaining two-thirds to be divided between my three sons equally. At the death of my wife or remarriage my three sons shall receive this income in equal shares. I further direct that these payments be made each six months commencing one year after my death and the income for the first year after my death shall remain as part of my estate."

"10th. Should any of my sons die without issue, then that part of my estate which I have placed in trust shall be divided equally among the children of my sons living at the time of the death of my wife. (I mean to say that this trust shall end at the death of my wife and each grandchild then living shall participate in this division equally.)"

Though all the sons were still living when the widow died, the court below was of opinion, under the foregoing parenthetical clause, that the grandchildren were entitled to the entire residuary estate, and hence so ad-

judged; this appeal by the three sons followed.  In our opinion the judgment must be reversed.

The 8th paragraph throws but little light on the intention of testator, save, perhaps, as suggested by appellants, that, considering it from one viewpoint, the children would be entitled to the principal, because of the absolute gift of all the income to them, for an indefinite period, without any gift over of the principal.  The rule thus relied on is well settled, but we do not think it necessary to invoke it here.

The first sentence of the 10th paragraph says: "Should any of my sons die without issue, then *that part* of my estate which I have placed in trust shall be divided equally among the children of my sons living at the time of the death of my wife."  It will be noticed that this does not give to the grandchildren the whole of the trust estate, "should any of my sons die without issue," but only "that part of my estate," evidently meaning "that part" which the son so dying would otherwise have taken.  In other words, it simply provided that if any of the "sons die without issue," during the lifetime of the wife, then "that part of my estate" which, but for that fact, would have gone to him, shall not go to the other sons of testator, but to the grandchildren.  None of the sons died, however, and this substitutionary gift did not take effect.

The explanatory parenthetical sentence which closes the 10th paragraph, does not enlarge the gift to the grandchildren.  It says "(I mean to say that this trust shall end at the death of my wife and each grandchild then living shall participate in this division equally)." It will be noticed that here also testator does not give the whole of his estate to the grandchildren, as could easily have been done had it been intended.  What he says is that "this trust shall end at the death of my wife and each grandchild then living shall participate in *this division* equally," that is, in the division of "that part of my estate......which shall be divided" in case "any

of my sons die without issue." "This division," neces-
sarily means the division already referred to, and, hence,
as none of the sons did die before the time specified,
there was no available gift to the grandchildren under
either sentence of this paragraph.

What then is to become of this residue? Two sug-
gestions were made: (1) That an intestacy resulted, in
which event appellants would take; and, (2) As al-
ready mentioned, that a gift of the income, for an in-
definite time, without any bequest of the corpus in re-
mainder, carries with it a gift of the principal. We
think we are not driven to adopt either view.

In Beilstein v. Beilstein, 194 Pa. 152, testator gave to
his daughter the income of a certain property for life,
"but should she die without leaving a family" then it
was to go to his own brothers and sisters. There was no
express gift of the property if the daughter should die
leaving a family, the event which in fact occurred. We
said, page 154: "The devise over in case Gertie should
die 'without leaving a family' is an implied devise to her
family if she should leave one. It is only if she does
not, that the devise over is to take effect, and there is a
necessary implication that, in the other unexpressed con-
tingency of her leaving a family, the estate is to go to
them. This is practically assumed without question in
the numerous cases on the subject, which are carefully
reviewed in Seybert v. Hibbert, 5 Pa. Superior Ct. 537."

The conclusion stated was approved, under varying
facts, in Reisher's Est., 261 Pa. 223, 229; Bechtel v. Fet-
ter, 267 Pa. 173, 179, and Lippincott's Est., 276 Pa. 283.
In the last-named case, the gift of the income was to the
wife and nephew "share and share alike. Should either
die before the other, without descendants alive at his or
her decease, this share shall go to the one surviving."
The nephew died before the wife, leaving a daughter, and
the contest arose over the one-half of the income accru-
ing after his death and before that of the widow. In re-
citing the three contentions made, we said (page 286):

"At the audit below there were three claimants for this fund. The widow alleged there was no express gift of it, in the event of the nephew dying during her lifetime, leaving descendants, and hence she was entitled to a portion of it, as upon an intestacy. The administrator of the estate of the nephew claimed that the nephew was given an estate during the lifetime of the widow, and as he died during that lifetime, leaving a descendant him surviving (who could not take because the will did not so provide), under the gift per autre vie this one-half share should be awarded to him, as the nephew's personal representative. The daughter of the nephew claimed that under the will there was an implied gift to the nephew's descendants, should he die during the lifetime of the widow leaving descendants, and hence this fund should be awarded to her as the only one in that class. This latter was the conclusion reached by the court below; and, from the decree made in accordance with it, the other two claimants have severally taken these appeals." We affirmed, saying (page 287) : "Counsel for the widow, without directly saying so, asks us to overrule Beilstein v. Beilstein, 194 Pa. 152, and the cases in its train, largely because the English courts still follow their earlier antagonistic conclusions. We decline to do this; on the contrary, we reaffirm the conclusion reached in that case, both on the ground of stare decisis and because it is sound in principle. No one doubts but that every layman would understand a will in precisely the way there decided, and since this is a layman's will, written by a layman, we ought so to construe it: Shaffer's Est., 262 Pa. 15, 19......With Beilstein v. Beilstein, supra, as our guide, it is clear, if the first paragraph of the residuary clause is alone considered, appellee would be entitled to take, for there would be an implied gift to her, because her father, the nephew named in the will, died leaving her as his only descendant."

Under the above authorities, if one of decedent's sons had died during the lifetime of the widow, his descend-

ants would have taken their father's share, though it is not so stated in, but can only be implied from, the will. There must have been a son's share, however, or, as this will expresses it, there must have been "that part of my estate," to pass under the gift over, actually made, before there could be an implication of a gift of "that part" to the son's surviving children. The implication therefore is as applicable in the contingency which has arisen, as it would have been in the event of death leaving issue. Hence it should be applied here also, especially as it accords with the unbending rule of interpretation, that the heir shall not be disinherited save as the result of express words or necessary implication, neither of which, as we have already shown, appears in this will. The controlling principle may, therefore, be stated as follows: When the income of an estate is given to one person, for a period which must certainly end, and there is no gift of the estate in remainder, save in the event of the first taker dying without issue before the expiration of the particular estate, and in fact he survives that time, or if the particular estate is for his own life and he dies leaving issue him surviving, then a gift of the estate in remainder will be implied in favor of him or his issue, as the case may be.

In the instant case, it may be added that no reason occurs, and none has been suggested, why the children, who were given a share of the income during their mother's life, should be cut off absolutely, immediately on her death. We can readily appreciate why testator wished all of his estate to remain in the direct line of descent, if a son died without issue during the lifetime of the widow; but we cannot understand why testator should desire to absolutely cut off his own children on the death of the widow, or why he should have referred to the event of their dying without issue as the factor in determining that the grandchildren should take "that part of my estate," unless he meant that, if such a contingency

did not happen (as here it did not), the children should take the property.

In the opinion below it is said: "In the 12th clause he [testator] inferentially states that he has made bequests to his sons both directly and indirectly, the $3,000 being the direct bequests to which he refers. The 14th clause contains a veiled apology for some of the provisions contained in the will, indicating that it contained some provisions out of the ordinary. The only bequests in the will that bear the interpretation of indirect bequests are the bequests to his grandchildren, treating them as being indirectly bequeathed to their parents. The only unusual provisions contained in the will that would justify the apology for the 14th clause would be the bequests to the grandchildren instead of his children.

"Both the 12th and 14th clauses therefore point to the conclusion that testator intended that the corpus of the trust should, in any event or all events, go to his grandchildren equally."

The 12th paragraph referred to is as follows: "I hope that the direct bequests which I have made to my sons will be invested in homes for themselves and families." How there could be thus something "indirectly bequeathed" to petitioner, who was one of the sons and himself had no children, is not explained, obviously because it cannot be; but this fact necessarily leads to the conclusion that the inference suggested by the court below is not a reasonable one. Admittedly the only "direct" gift to the sons was the bequest of $3,000 to each of them, for it was to be paid "immediately," which is one of the primary meanings of the word; hence the inference of an indirect gift, elsewhere appearing in the will, if any such inference can be drawn, would be the gift of the corpus, after the death of the widow, whom presumably testator desired should live as long as possible, and therefore requested his sons not to wait for

this postponed gift, ere they purchased "homes for themselves and their families."

The 14th paragraph says: "With charity for all, and malice to none, wishing to do the right, knowing that finite mind is liable to err, I hope this act carefully considered may be acceptable to those I loved, considered just by my fellowmen, and stand approved by the Judge of the Universe, in the great day of accounts." How this could be a "veiled apology" to anybody is also left unstated. In the first paragraph, testator directed that "the following inscription shall be placed on this monument [in his burial lot], on the side facing my grave: 'I shall be satisfied when I awake in thy likeness' "; Psalm 17, v. 15. These two extracts show that testator was probably a deeply religious man, and wished therefore to convey the idea that, in what he doubtless considered the last solemn act of his life, he had done what he hoped would be recognized by his family, his neighbors and the "Judge of the Universe" alike, as the best that he could do. Beyond this no other inference can reasonably be drawn; certainly none that would change the course of descent as expressed in or implied from the will.

The declaratory judgment of the court below is reversed, and it is now adjudged that each of testator's children became entitled to a one-third interest in his residuary estate on the death of their mother; the costs of this appeal are to be paid by the estate of testator.

Mr. Justice KEPHART, dissented.