## Emmerich Estate.

Argued May 11, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Frank L. Pinola,* with him *Rocco C. Falvello, Conrad A. Falvello* and *R. S. Taylor,* for appellants.

*John H. Bigelow,* with him *Carl E. Kirschner,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 24, 1943:

This contest is between the widow and son of testator against three named charities. The question involves the construction of testator's holographic will. Decedent was a lawyer, but for many years had ceased to practice actively. The language is most obscure and involved. What Mr. Chief Justice MAXEY wrote in *Williamson's Estate,* 302 Pa. 462, has particular application to the

present situation, page 466: "As it is probable that no other reported will ever had the grammatical engineering of the will before us, it is useless to search for precedents which will guide us infallibly in determining the testatrix's intentions. Lord Coke never made a more sage observation than when he said: 'Wills and the construction of them do more perplex a man than any other learning; and to make a certain construction of them excedit jurisprudentum artem': Roberts v. Roberts, 2 Bulst. 130. 'No will has a brother,' declared Sir William Jones. Cited in Ball v. Phelan (Miss.), 23 L. R. A., N. S. 895, 903. We will agree that the will before us has 'no brother' or any other close syntactical kin that we have any acquaintance with. This will must be construed by itself on its own unusual phrasing. Each will is its own best interpreter, and a construction of one is no certain guide to the meaning of another: Bechtel, Exr., v. Fetter, 267 Pa. 173, 177, Stewart, J.; Tarter's Est., 291 Pa. 458, 461; Mifflin's Est., 279 Pa. 429, 432."

The first part of the testamentary scheme appears clear. Testator devised his home to his widow in fee. He then gave to his trustees, securities to be selected by the widow, to secure to her, for life, an income of $5,000. per annum. By a similar bequest he provided for his son, for life, so that the son's income should be $2,400. per annum, but, should the testator's widow die in the son's lifetime, the son was to receive $5,000. per annum. Testator's brother likewise was given a similar gift, for life, of $1,000. per annum. Following the bequest to the brother, testator bequeathed absolutely $1,000. to each of two named individuals. He also provided that upon the death of the brother, $2,000. was to be given to each of five named persons. These latter legacies were manifestly payable out of the corpus set aside for the use of the brother, and upon his death, by agreement of all parties, it was so distributed.

Testator then wrote this clause: "The returns from the remainder of the fund set aside for my brother shall

be divided two-thirds to Franz's Mother and one-third to my son, Franz, as shall the returns from any part of this estate not otherwise disposed of, meaning by this that any sum left or which may accrue, shall be divided, leaving them in excess of the $5000.00 per annum and the $2400.00 per annum heretofore provided". ·

From the foregoing, it seems clear that by "returns" or sums which may "accrue", testator was referring to *income* and not to corpus. He provided that not only such income "from the *remainder* of the fund set aside for the brother" but from "any part of this estate not otherwise disposed of", shall be divided two-thirds to the widow and one-third to the son. From the foregoing language there appears not to be the slightest doubt that the testator bequeathed two-thirds of the income from his residuary estate to his widow, and the remaining one-third thereof to his son. It is most significant at this point to note that while testator bequeathed the *income* from his residuary estate, *he made no disposition of corpus.*

Testator's next concern relates to the contingencies after the son's death, of the survival of the son's widow, or her remarriage, or of the son leaving children of, or not of, a named religious faith; also of the testator's widow taking against his will. In these various situations testator increases or diminishes the amount of income payable to certain of them.

After pausing in these testamentary dispositions to give to a fraternal lodge a legacy of $500., and to a friend the testator's office furniture and law books, he writes the following clause, which gives rise to the present controversy: "Concerning any residue or remainder of estate which may hereafter be left in case of those interests left to my son Franz or his family defaulting, I desire that it shall be divided into four equal parts. One part shall be given to the United Charities of Hazleton, Penna., as a mark of my respect for my friend Mrs. Gayley; one part to Saint Peter's Episcopal Church of Hazle-

ton, Penna., and two parts to the Lehigh University of Bethlehem, Penna.".

The charities maintain that the foregoing is a residuary clause, bequeathing to them the testator's entire residuary estate, subject to the life estates of the widow and the son. They maintain that the widow and the son are limited under the will to life estates in the proportions of two-thirds and one-third, and that after their respective deaths, the corpus passes to the charities absolutely.

We agree with the court below that the widow and the son are presently entitled to the residuary estate absolutely.

From the above recital of the facts, it is to be observed that in the elaborate provisions as to the funds to be set up to produce the annual sums of $5,000. and $2,400. and $1,000., for the benefit of the widow, son and brother, respectively, all of these were restricted "for life" and as to the son, also "subject to the limitations further on in this will". When, however, the testator disposed of the "part of this estate not otherwise disposed of", which is the fund now before the court, he made but a simple gift to his widow and son in proportions of two-thirds and one-third. This clearly was a gift of income and it was a gift without limit of time. It, therefore, is an absolute vested interest: *McKinstry's Est.*, 296 Pa. 185; *Estate of Henry Osborn*, 88 Pa. Superior Ct. 7. See also cases cited in Hunter's Commonplace Book, Volume I, Section 6 (a), page 380. This gift was not cut down by the subsequent provisions of the will in favor of the son's wife and children, which provisions expressly referred to the annual sums of $2,400. and $5,000., and no other part of the estate. It follows, therefore, that when the testator gave the residue of his estate "which may hereafter be left in case of those interests left to my son Franz, or his family defaulting", he referred only to the parts of his estate which he had theretofore given to his son and family successively, to

wit: the funds which produced the annual sums of $2,-400. and $5,000., and not to the excess of his estate over those amounts which he had already given to his widow and son in absolute terms.

There is no merit in the appellants' contention that the widow and son are bound by the confirmation of the executors' account and their acceptance of income for nineteen years without claim to the principal. It is well settled that an award in trust for a legatee for life is not conclusive that he did not have an absolute estate, where the question was not raised and passed upon in that accounting; *Johnson's Est.*, 276 Pa. 291, and cases cited in Hunter's Commonplace Book, Volume II, 5(a) page 1146.

The judgment of the court below is affirmed. Costs to be paid out of the fund.