## Willing Estate

12

*Howard H. Yocum,* for accountants.

*MacCoy, Evans & Lewis, George G. Chandler, Cuthbert H. Latta,* and *Duane, Morris & Heckscher,* for claimants.

*L. Stauffer Oliver,* guardian and trustee ad litem, appeared p. p.

*Irvin Stander,* for Commonwealth.

KLEIN, P. J., June 3, 1959.—Alice Barton Willing died on April 7, 1903, leaving a will by item fifteenth of which she gave her residuary estate to her trustees in trust:

"*1. . . . to invest and keep invested the same, and to pay the net income therefrom in three equal shares to my said son and my said two daughters for the term of their respective natural lives. The said net income shall be paid to each of them free and clear of and shall not be subject to their or any of their debts, contracts, engagements, alienations, or anticipations, and shall be free from all liability to levies, attachments or executions.

"2. Each of my said children shall have power to appoint his or her respective share of my estate by his or her last will to and among the following persons and no others, to wit: To and among their own respective

---

* In the will, the paragraphs are not numbered. We are numbering them for ease of reference as was done by counsel in their briefs.

descendants, and to one another, and to the descendants of each other, in such proportions and to such persons in any of said classes as such deceased child shall appoint; and when such appointment takes effect my said Trustees shall pay to such appointees the income of the share of such deceased child until the death of the survivor of my said children, and from and after the death of the survivor of my said children, the said Trustees shall pay over the principal of said trust fund to the parties entitled thereto under said appointment. And in case any of my children shall die leaving a wife or husband, as the case may be, such child shall also have power to appoint the whole or any part of the income of his or her share to such wife or husband until the death or remarriage of such husband or wife, and after such death or remarriage the share shall be paid over to the parties entitled under said appointment.

"3. In default of such appointment by my children, or in case their, or any of their, appointments should from any cause whatever be inoperative, then as each of my children dies, I direct one-third of the annual income of said trust fund to be paid, and I give and bequeath the same, to the then living children of such of my children so dying, and the issue then living, if any, of such of their children as may then be dead,— the issue or lineal descendants of any that may be dead to take per stirpes or by representation the share to which their immediate ancestor would have been entitled if living; and, in default of appointment, in the event of the death of any of my children without lineal descendants then living, the net income from said trust fund shall thereafter be divided among my surviving children during their respective life or lives, the issue of any deceased child to take per stirpes during the lifetime of any survivor of my children; it

being my will that there shall be no division of the principal of said trust funds during the lifetime of any one of my said children. When all of my said children shall have died I direct said trust funds to be divided according to the appointment made by my children, and in default thereof among their children or descendants per stirpes or by representation, so that the children or descendants of each of my children shall take the share of which their immediate ancestors received the income during life; or if any of my children leaves no lineal descendants then to be divided amongst his or her surviving brother and sister or their lineal descendants per stirpes.

"4. Provided, however, that if, under the foregoing provisions, my property shall become vested in a sole surviving child by reason of the death of my other children without leaving any descendants then living, I authorize and empower said last surviving child to make such appointment and disposition of the property as he or she may deem advisable, with the same effect as if said surviving child were entitled to said property absolutely. And in case of the death of said surviving child without appointment and without leaving lineal descendants, then I give, devise and bequeath my residuary estate to such persons as would be entitled thereto under the intestate laws of the Commonwealth of Pennsylvania if such last surviving child were seized in fee of said property and had died intestate, unmarried and without issue."

A photostatic copy of the will is annexed hereto.

The fund presently accounted for was awarded to the present accountants by adjudication of Klein, J., dated February 8, 1941, and the occasion of the filing of the present account was the death on June 9, 1958, of Ava Alice Lowle Ribblesdale, last surviving child of testatrix, and the resulting termination of the trust.

The City Bank Farmers Trust Company, N. Y., now First National City Trust Company, is stated to be executor under the will of the said Ava Alice Lowle Ribblesdale. She is stated to have had two children, Vincent Astor, who died on February 3, 1959, without issue, and Alice A. Von Hoffmannsthal, later Harding, afterwards Bouvrie, who died on July 19, 1956, leaving to survive her four children, Ivan Obolensky, Sylvia Obolensky, now Guirey, Romana Van Hoffmannsthal, now McEwen, and Emily Sophia Harding. The will of the said Ava Alice Lowle Ribblesdale, a copy of which is annexed hereto, exercised her power of appointment under the will of the present testatrix, by appointing her share of her mother's estate, in equal shares, to her aforesaid four grandchildren, all of whom are living and of age, except Emily Sophia Harding, who is stated to be a minor, for whom Max Perl, Esq., is stated to be guardian.

John Rhea Barton Willing, son of testatrix, died on September 2, 1913, without issue and without having exercised his power of appointment under the will of testatrix.

Susan R. W. Lawrence, the other daughter of testatrix, died on May 2, 1933, leaving to survive her one child, Frances Alice Willing Lawrence, later Poniatowska, and leaving a will, of which Charles L. Lawrence and Guaranty Trust Company of New York are stated to be executors, and by the terms of which she devised and bequeathed her residuary estate, including any property over which she had a power of appointment, to her daughter, Frances Alice Willing Poniatowska.

By decree of this court, dated February 19, 1959, L. Stauffer Oliver was appointed guardian ad litem for minor remaindermen and trustee ad litem for unborn children and issue and for any other unascertained persons.

John Rhea Barton Willing, son of testatrix and cestui que trust as to one third of the trust, having died without issue and without having exercised his power of appointment under the will of testatrix, the parties in interest have requested the auditing judge to determine:

(1) Whether the one-third share of the trust estate, the income from which was enjoyed by the said John Rhea Barton Willing, in his lifetime, vested, under the language of the will quoted above, absolutely, in equal shares, in his two surviving sisters, Ava Alice Lowle Ribblesdale and Susan R. W. Lawrence, subject only to suspension of distribution until all of the children of testatrix died, viz., one sixth in the said Ava Alice Lowle Ribblesdale and one sixth in the said Susan R. W. Lawrence, in which case the respective one-sixth shares would pass, not under the powers of appointment exercised by each of them, but to their respective personal representatives; or

(2) Whether, upon the death of the said Ava Alice Lowle Ribblesdale, last survivor of the children of testatrix, the said one-third share of John Rhea Barton Willing passed directly under the will of testatrix, in equal shares, to lineal descendants of the said Susan R. W. Lawrence and Ava Alice Lowle Ribblesdale, respectively, rather than to their personal representatives; or

(3) Whether one-half of the one-third share of John Rhea Barton Willing, or one-sixth of the whole does not, in the case of each of Ava Alice Lowle Ribblesdale and Susan R. W. Lawrence, who exercised their powers of appointment, increase their appointive shares to one-half of the entire estate, and consequently pass to the appointees under their respective wills.

Our study of this will leads us to the conclusion that the contentions of the executors of the estates of the

two deceased daughters that the deceased son's share vested in them, as well as the contention of the temporary administrator of the estate of Vincent Astor, the deceased son of the daughter, Ava, that this share vested in the surviving issue of the two daughters, must both be rejected. In our opinion, the share in question passed under the powers of appointment given to the daughters.

The criterion for the construction of every will is testator's intent: Newlin Estate, 367 Pa. 527 (1951); Britt Estate, 369 Pa. 450 (1952); McFadden Estate, 381 Pa. 464 (1955); Sowers Estate, 383 Pa. 566 (1956); Weaver Estate, 390 Pa. 128 (1957); Richley Estate, 394 Pa. 188 (1958).

"Every will is in a sense unique and therefore precedents are of little value; Kirkpatrick's Estate, 280 Pa. 306, 124 A. 474; Brennan's Estate, 324 Pa. 410, 188 A. 160; Jackson's Estate, 337 Pa. 561, 12 A. 2d 338. Each will is its own best interpreter, and a construction of one is no certain guide to the meaning of another: Bechtel v. Fetter, 267 Pa. 173, 111 A. 50; Williamson's Estate, supra; Emmerich Estate, 347 Pa. 307, 32 A. 2d 400": Mulert Estate, 360 Pa. 356, 359 (1948).

In Walker Estate, 376 Pa. 16 (1954), the late Justice Allen M. Stearne said, at page 18:

"In construing a will it is the court's first duty to examine the will and, if possible, ascertain its meaning without reference to canons of construction: Muliken v. Earnshaw, 209 Pa. 226, 58 A. 286; Groniger's Estate, 268 Pa. 184, 187, 110 A. 465; Weir's Estate, 307 Pa. 461, 467, 161 A. 730."

Justice Stearne said further at page 22:

"We are required to consider intent from the whole will, construed from its four corners: MacMackin Estate, 356 Pa. 189, 51 A. 2d 689; March Estate, 357 Pa.

216, 53 A. 2d 606; Siple v. Greumelli, 357 Pa. 237, 53 A. 2d 607; Mulert Estate, 360 Pa. 356, 61 A. 2d 841. Regard must be had to the whole scheme, and if it is found that a particular intent is inconsistent with a general intent, the former must give way to the latter: Ferry's Appeal, 102 Pa. 207; Lefebvre v. D'Arcy, 236 Pa. 235, 84 A. 765; Shareff's Estate, 143 Pa. Superior Ct. 465, 17 A. 2d 623. A construction will be avoided which would lead to an unnatural, improbable or absurd result, and which, under all the language in the will, would constitute a highly improbable testamentary intent: Mayhew's Estate, 307 Pa. 84, 160 A. 724; Conner's Estate (No. 2), 318 Pa. 150, 178 A. 15; Hannach's Estate, 332 Pa. 145, 2 A. 2d 711; Fahey Estate, 360 Pa. 497, 61 A. 2d 880."

When article fifteenth is carefully analyzed, testatrix's dominant plan of distribution stands out in bold relief.

It is clear that decedent intended that each of her three children should receive equal benefits under her will. Each child was to receive one third of the net income for life with power to appoint the principal of "his or her respective share" of the estate by will to his or her descendants, to one another or to the descendants of each other.

If a child died without lineal descendants then living and without having exercised the limited power of appointment:

". . . the net income from said trust fund shall thereafter be divided among my surviving children during their respective life or lives, the issue of any deceased child to take per stirpes during the lifetime of any survivor of my children."

Testatrix specifically provided that no distribution of principal was to be made until all of her three children were dead. She said:

". . . it being my will that there shall be no division of principal of said trust funds during the lifetime of any of my said children."

Testatrix then used the following crucial language:

". . . when all my said children shall have died I direct said Trust Funds to be divided according to the appointment made by my children, and in default thereof among their children or descendants per stirpes or by representation, *so that the children or descendants of each of my children shall take the share of which their immediate ancestors received the income during life* . . ." (Italics supplied.)

By this language, testatrix, in effect, made two gifts, one in case of a child's exercise of his or her power of appointment, and the other in default of such exercise. The alternative gift defines precisely what passes thereunder, namely, the share of which the beneficiaries' "immediate ancestors received the income during life". As the daughter, Ava, was receiving the income from half of the trust fund at the time of her death, it follows that if she had died without appointing, her issue would have taken half of the principal of the trust.

Mr. Latta contends, and we think properly, that the daughters had the right, by implication, to dispose of this one half of the principal by appointment, also.

The law is settled that a gift under a will need not be made by express language. It may be made by implication: Beilstein v. Beilstein, 194 Pa. 152 (1899); Bechtel v. Fetter, 267 Pa. 173 (1920); Lippincott's Estate, 276 Pa. 283 (1923); List's Estate, 283 Pa. 255 (1925); Clayton's Estate, 302 Pa. 468 (1931); Riegel v. Oliver, 352 Pa. 244 (1945); Cope Estate, 353 Pa. 306 (1946); Rouse Estate, 369 Pa. 568 (1952); Wainwright Estate, 376 Pa. 161 (1954). In like manner

the creation of a power of appointment, as well as its character and extent, may be by implication, rather than by express direction. In Dixon Estate, 5 Fiduc. Rep. 198 (1955), Saylor, J., said at page 201:

"Authority for the implication of a power of appointment may be found in Shoofstall v. Powell, 1 Grant 19, in which a power of appointment was implied from the direction that the estate should revert if the grantee under a deed died intestate. The implication of a power is also supported by the Restatement of the Law of Property, Section 323, Comment f:

" 'f. *Powers created by implication.* In limitations which contain no grant of a power in specific language, the form of a gift over after a life estate may be such as to manifest an intent that the life tenant should have the power to dispose of the remainder.' " See also Wasserman Estate, 5 D. & C. 2d 117 (1955), affirmed Supreme Court, May 21, 1956; Farwell on Powers, 3rd Ed., p. 56; Gray, Powers in Trust and Gifts Implied in Default of Appointment, 25 Harv. L. Rev. 1.

Since the gift in default of appointment covered half of the corpus and was to become effective only if the power of appointment was not exercised, the conclusion seems inescapable that both gifts were intended to dispose of precisely the same fund and that the power of appointment also extended, by implication, to one-half of the corpus.

That testatrix's over-all testamentary plan contemplated that the share of a child who died without issue should be disposed of by appointment by the surviving child or children is further confirmed by the last paragraph of item fifteenth, which provides:

"Provided, however, that if, under the foregoing provisions, my property shall become vested in a sole dren without leaving any descendants then living, I

authorize and empower said last surviving child to make such appointment and disposition of the property as he or she may deem advisable, with the same effect as if said surviving child were entitled to said property absolutely. And in case of the death of said surviving child without appointment and without leaving lineal descendants, then I give, devise and bequeath my residuary estate to such persons as would be entitled thereto under the intestate laws of the Commonwealth of Pennsylvania if such last surviving child were seized in fee of said property and had died intestate, unmarried and without issue."

It seems reasonably clear that testatrix intended that each of her three children should receive one-third of the net income for life with a limited power to appoint one-third of the principal to certain designated persons. If a child should die without exercising the power, his or her share would pass to the other two children who survived, each of whom had the power to dispose of half of this share by appointment. If two children should die without leaving issue and without making appointments, the surviving third child would have the right to dispose of the entire estate as if he or she were the absolute owner thereof. Since only one child, the son, died without issue and without having exercised his power, it follows that each of his two sisters, who survived him, had the right to dispose of one-half of the corpus of the estate by their appointment.

Mr. Bregy, who claimed one-half of the son's one-third share on behalf of the executors of the estate of Ava, one of the daughters, observes with considerable merit in his brief:

"The entire provision concerning distribution of principal (paragraph 5 above) is grammatically ambiguous with respect to what is to be divided in the

variety of contingencies mentioned; the subject of the sentence is 'said Trust Funds,' so that literally the entire principal would be distributed in three different ways—like a horse galloping off in all directions. Thus, it is impossible to construe the clause literally."

We cannot agree with Mr Bregy, however, that the confused horse runs in the direction he suggests. In our opinion, testatrix did not intend that the son's share should vest in her daughters upon his death without issue.

The division of principal in remainder is expressly deferred until the death of testatrix's last surviving child. The direction to divide the share of a child who left no lineal descendants "amongst his or her surviving brother and sister" must therefore be regarded as a sheer inadvertence, which cannot be reconciled with testatrix's dominant intention, as revealed by a careful study of the will from its four corners. Moreover, the expression "his or her surviving brother and sister" was employed by testatrix very loosely, as evidenced by her failure to refer to surviving "sisters" (plural). Since testatrix had only one son, John, he could leave to survive him only sisters, if he died first, as was the case, not a brother and sister.

Little effect can be ascribed to language as careless as this in derogation of what appears to be an otherwise clearly defined testamentary plan.

The balance of principal shown by the present account and supplement thereto will accordingly be awarded to the parties entitled thereto under the respective wills of Susan R. W. Lawrence and Ava Alice Lowle Ribblesdale, exercising their powers of appointment under the will of testatrix. . . .

And now, June 3, 1959, the account is confirmed nisi.