Hill Estate.

270

Argued March 18, 1968. Before Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*John V. Snee,* for appellants.

*James S. Crawford, III,* with him *Thorp, Reed & Armstrong,* for appellee.

OPINION BY MR. JUSTICE JONES, November 12, 1968:

On this appeal we are called upon to interpret the language contained in the last will of Edward Hill (testator) who died November 12, 1966 survived by an aunt and two first cousins, children of a deceased aunt (appellants).

On November 24, 1942, testator, then 37 years of age, married Kathryn C. McCabe, then 36 years of age; of that marriage no children were born. Approximately one and one-half years after the marriage, testator—without the help of a lawyer—drew the will now before us. On April 28, 1966, Kathryn C. Hill died; the testator died approximately seven and one-half months later.

Testator's will provided: "(1) If at my demise I have no heirs other than my dear wife Kathryn C. Hill I wish to set up a trust the income from which to go to her as long as she has no other means of support or remains unmarried. [At this point in the will, a bank was named trustee]. When her death or remarriage occurs I direct that the same go to my Alma Mater, Bucknell University at Lewisburg, Pa. (Both estate and income from same). To be used as the University Board of Directors so desires. (2) If at my demise I have more heirs than my dear wife Kathryn C. Hill I direct that my entire estate go to her solely." Testator then named a bank as executor.

At the audit of testator's estate before the Orphans' Court of Allegheny County, both Bucknell University

and appellants claimed distribution of the balance of the estate.[1] The record simply reveals a stipulation by the parties as to the dates of birth, the date of marriage and the dates of death of testator and his wife. There is nothing of record to show whether testator's wife was ever pregnant, whether she could have borne children or could have anticipated a child of her marriage to testator.

After legal arguments, the court (Judge RAHAUSER) entered a decree nisi awarding the balance of the estate to Bucknell University (Bucknell). Exceptions to this decree were dismissed by the court en banc (Judge KRAMER filing a dissenting opinion) and a final decree was entered from which the instant appeal was taken.

The initial question presented is whether the testator used the word "heirs" in its legal sense or in its popular sense, i.e., "children".

In resolving this question, we bear in mind certain well settled principles in this area of the law: (a) the duty of the court is to ascertain, if possible, the intent of the testator (*Burleigh Estate*, 405 Pa. 373, 376, 175 A. 2d 838 (1961); *Moltrup Estate*, 424 Pa. 161, 170, 225 A. 2d 676 (1967)); (b) the court must garner, if possible, the intent of the testator from a consideration of *all* the language contained in the four corners of the will, together with all the surrounding and attendant circumstances and from the scheme of distribution and not merely from isolated clauses or provisions of the will (*Vandergrift Estate*, 406 Pa. 14, 26, 177 A. 2d 432 (1962); *Grier Estate*, 403 Pa. 517, 525, 526, 170 A. 2d 545 (1961)); (c) "[w]hen a decedent drafts a last will and testament, he is presumed, in the absence of an indication to the contrary, to have intended to

---

[1] The inventory filed placed a value of $142,180.30 on the personalty of the estate.

dispose of his entire estate and not to die intestate as to any part of it" and a construction should be adopted that would avoid an intestacy unless such construction would do violence to the language of the will: *Farrington Will*, 422 Pa. 164, 168, 220 A. 2d 790 (1966) and authorities cited therein; (d) "[w]here a testator uses words which have a legal or technical meaning they are to be so interpreted according to the law in effect at the testator's death unless the will contains a clearly expressed intention to the contrary" :[2] *Houston Estate*, 414 Pa. 579, 595, 201 A. 2d 592 (1964) such rule being one of construction (*Grier Estate, supra*, p. 525; (e) rules of testamentary construction are to be resorted to only if the language of the will is ambiguous or conflicting or the intent of the testator is for any reason uncertain (*Hoover Estate*, 417 Pa. 263, 266, 267, 207 A. 2d 840 (1965) and authorities therein cited).

If appellants are correct in their interpretation of the word "heirs" in the sense such term is used in the intestate law, the testator died intestate and the balance of his estate could go to appellants under the statutory law governing intestacy. If Bucknell is correct in its interpretation of the word "heirs" as "children", then, upon the death of Kathryn C. Hill, the gift to Bucknell was accelerated. There is also a question whether the testator neglected to provide for *any* disposition of his estate on the occurrence of the event which did occur, *i.e.*, the death of the wife prior to testator's death.

The rationale of the majority opinion in the court below was: (1) the will indicates that, if no children were born, testator's wife and Bucknell were to be the

---

[2] This rule is "peculiarly applicable where the technical words employed are used by one learned in probate law": *Grier Estate, supra*, p. 525.

sole objects of testator's bounty and that when testator spoke of "heirs" he meant "children"; (2) that the scheme of testator's contemplated disposition of his estate clearly requires such interpretation; (3) that such result avoids an intestacy; (4) that, in view of testator's evident intent, resort need not be made to the rule of construction which would require that the word "heirs" to be given a technical meaning; (5) that, even though testator failed specifically to provide for the event wherein his wife predeceased him, he did so by implication. The rationale of the minority opinion was: (1) that testator's first testamentary disposition —"If at my demise I have no heirs other than my dear wife" and second testamentary disposition—"If at my demise I have more heirs than my dear wife"—never became effective; (2) that the language of the will is not ambiguous; (3) that while an intestacy should be avoided, if possible, there is an "equally potent presumption that an heir is not to be disinherited except by plain words or necessary implication"; (4) that testator failed to provide for *any* disposition of his estate should he die before his wife, leaving persons who could qualify as "heirs" under the laws of intestacy.

As we have previously noted, the word "heirs" is a technical word. While we recognize the existence of a rule of construction which requires that technical words be given their technical meanings, such recognition does not mandate that we accord to the word "heirs" *in this will* its legal or technical meaning. In the first place, even though the testator was a college graduate, he was a layman unversed in the law or legal language and, so far as the record reveals, was not aware of the technical as opposed to the popular meaning of the word "heirs". While this is in no sense controlling, it is a circumstance to be given consideration in our interpretation of the language used by the

testator. In the second place, in view of what we consider from our examination of this will to be testator's *evident* scheme of disposition of his estate, we are not required to apply this rule of construction. In the third place, on occasions, our appellate courts have construed the word "heirs" to mean "children". See: *Haverstick's Appeal*, 103 Pa. 394 (1883); *Stambaugh's Estate*, 135 Pa. 585, 19 Atl. 1058 (1890); *Miller's Estate*, 145 Pa. 561, 22 Atl. 1044 (1891); *Tucker's Estate*, 209 Pa. 521, 58 Atl. 889 (1904); *Mayer v. Walker*, 214 Pa. 440, 63 Atl. 1011 (1906); *Church v. Baer*, 236 Pa. 605, 84 Atl. 1099 (1912); *Bechtel v. Fetter*, 267 Pa. 173, 111 Atl. 50 (1920); *Schleich's Estate*, 286 Pa. 578, 134 Atl. 442 (1926); *Linn v. Bowman*, 77 Pa. Superior Ct. 261 (1921); *Howard's Estate*, 24 D. R. 155 (1915). In the fourth place, if we construe the word "heirs" in this will in its technical sense, we reach an absurd result. Cf. *Worst v. DeHaven*, 262 Pa. 39, 41, 104 Atl. 802 (1918). If we accept appellants' construction of the word "heirs", an examination of the will discloses this absurdity: if the word "heirs" be construed technically, then, under testator's second testamentary disposition, if, in addition to his wife, testator was survived by "heirs" such as appellants, the testator's wife would take the estate outright, whereas, under testator's first testamentary disposition, if testator was not survived by "heirs" such as appellants, testator's wife would not take his estate outright but only in trust. Such disposition of his estate defies common sense. From an examination of the language of this will *in its entirety,* we believe that testator clearly intended that if he were survived by a wife and no "children", then his estate would go to his wife in trust, for life or remarriage, and then to the university from which he was graduated, and that, if he were survived by his wife and a child or children, then his

276

estate would go to his wife outright.[3] In this connection, Judge RAHAUSER aptly said: "Testator's outright gift to his wife, if he had 'children', makes sense; she could reasonably be expected to give them what was left at her death. Likewise, his limitation of the gift to his wife for life or until remarriage, with remainder to Bucknell University, if he had no 'children', makes sense since this would provide for his wife as long as she needed his care, with the remainder to his university.

"However, it is difficult to believe that the testator intended his wife to take his entire estate absolutely if she survived him and if his only other surviving heirs were an aunt and two cousins, but that he intended his wife to take only a defeasible life estate, with remainder to Bucknell University, if he was survived by his wife and no other 'heirs'. Why would the testator be more generous to his wife if he was survived by collateral relatives than he would be if he left no one to survive him except his wife? But if the testator was thinking of what he would give his wife, depending on whether or not he had 'children', it is easy to see that he may have wished her to have his entire estate absolutely if he had 'children' (in order that she could take care of herself and the children as she saw fit), but only to have what she *personally* needed from his estate if there were no 'children', with remainder to Bucknell University." (R. at 11a, 12a)

Our examination of the language of this will in its entirety leads us to the conclusion that, when testator employed the word "heirs", he meant "children".[4]

---

[3] Impliedly, at least, the testator had confidence that his estate under such circumstances would be passed on by his wife to his child or children to the exclusion of the university.

[4] We believe from our scrutiny of the testamentary language that the testator used the words "heirs" to mean "children". We

The next inquiry is whether the testator failed to provide for a disposition of his estate in the event his wife predeceased him. The real thrust of appellants' contention and that of the minority opinion is that the testator failed to make *any* disposition of his estate upon the occurrence of the event which did occur, *i.e.*, the death of testator's wife prior to that of testator. As Judge KRAMER said in his minority opinion: "[Testator's] only fault was one of omission. He failed to provide for the disposition of his estate if his wife predeceased him and he died leaving heirs." If this be so, we cannot make provision "for an event which appears to have been absent from testator's mind": *Riegel v. Oliver*, 352 Pa. 244, 248, 42 A. 2d 602 (1945) and authorities therein cited.

We believe that the holding of this Court in *March Estate*, 357 Pa. 216, 53 A. 2d 606 (1947) is presently apposite. In *March*, the residuary estate was placed in trust for a minor child, the income and principal to be used as required during the child's life; when the child reached his majority or thereafter, the principal and accrued income could be paid over to the child if he was then capable of managing his estate; if the child died "while any of said trust fund . . . [was] still in the hands of the trustee," then the will provided a gift over to certain named remaindermen; the will did not provide for disposition of the residuary estate at any time other than while the fund was in the trustee's hands. The child predeceased the testator. This Court awarded the fund to the remaindermen stating, inter alia (pp. 218-19) : "The son prede-

recognize that in the portion of the will quoted above testator speaks of "heirs other than my dear wife". Clearly, "heirs" in that sentence does not mean "children" in the literal sense but rather means "natural objects of the testator's bounty", which would include both the wife and children.

ceased testator and consequently no funds have come into the possession of the trustee. The next of kin maintain that the gift of the remainder was *contingent* upon the death of the life tenant while the trust fund '. . . [was] still in the hands of the Trustee . . .', and because of the nonoccurrence of that event the bequest to the remaindermen lapsed, and an intestacy ensued, which passed the estate to them. The learned orphans' court rejected this contention and ruled that the death of the life tenant in the lifetime of testator accelerated the remainder and made the awards accordingly. This appeal followed.

"The death of a life tenant in the lifetime of testator accelerates the remainder in the absence of a manifestation of a contrary intent: [citing authorities] . . .

"There is not the slightest indication, upon consideration of the entire testamentary scheme, which even remotely suggests that testator intended that the gift to the remaindermen was *contingent* upon the purely fortuitous circumstances that testator should predecease his son, that the trust should have been set up with the funds in the hands of the trustee, and that the son should die during the administration of the trust. [Citing authority]. The testamentary scheme reflects testator's contemplation of the normal expectancy that the son would survive him. Testator clearly revealed his concern as to the support, maintenance and education of the son and how the trust fund should be applied during the son's lifetime and after his decease. The testamentary provision concerning the manner of payment to the remaindermen was purely *directory* and manifestly did not contemplate a condition or contingency. Testator failed *specifically* to provide for a situation resulting from the predecease of the son. However, he did so *by implication.* Words or phrases

will be rejected when they have the effect to subvert or defeat testator's whole testamentary scheme and divest the bounty from those whom he obviously intended to benefit: [citing authorities]."

*March* is not without precedent. Cf. *Graham's Executors v. Graham*, 66 Pa. 477, 480 (1870); *Cox's Estate*, 180 Pa. 139, 143, 144, 36 Atl. 564 (1897); *Walker's Estate*, 344 Pa. 576, 578, 26 A. 2d 456 (1942); *Riegel v. Oliver*, 352 Pa. 244, 247, 248, 42 A. 2d 602 (1945).

"[E]ach will is its own best interpreter, and a construction of one is no certain guide as to the meaning of another": *Bechtel v. Fetter*, 267 Pa. 173, 177, 111 Atl. 50 (1920). From our reading and study of this will we are convinced that testator did not intend to give anything to those who ordinarily would be classed as his "heirs" in the technical sense. While we recognize that testator did not *specifically* provide for a disposition of his estate if his wife died before he did, nevertheless, we are convinced that, *by implication*, he did so. The plan, inherent in the four corners of this will, for the intended disposition of testator's estate leads us to agree with that which was concluded by the majority in the court below: ". . . that testator's will indicates that if he is not survived by children his estate is to go into a trust for the benefit of his wife until her remarriage or death, with remainder to Bucknell University. The wife having predeceased the testator, the gift to the remainderman, Bucknell University, would be accelerated in the absence of a testamentary direction to the contrary. We find no such direction."

Decree affirmed. Each party to bear own costs.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

Mr. Justice MUSMANNO did not participate in the decision of this case.