## Estate of James Noble deceased. Appeal of Elizabeth Smith.

*Will—Life estate—Separate use trust.*

Testator gave money legacies to his daughters and directed as follows: " As to the bequest to my daughter Margaret I direct my executors to invest the same on loan or stock as they may deem best and pay the proceeds thereof to my daughter for her sole and separate maintenance and that of her children during her life, and after her death I bequeath the same to her children absolutely, her receipt for the proceeds to be taken by my executors. As to the bequest to my daughter Mary I direct that my executors shall vest it in the same way and pay the proceeds to her separate maintenance and take her separate receipt therefor. . . . If my daughter Mary should die without issue then the bequest to her to go to my other daughters, share and share alike, subject to the limitations and directions as are made herein as to their bequests." *Held*, that Mary took a life interest only in the money bequeathed to her.

Argued April 28, 1897. Appeal, No. 529, Jan. T., 1896, by Elizabeth Smith from decree of O. C. Cumberland Co., dismissing exceptions to auditor's report. Before STERRETT, C. J., WILLIAMS, MCCOLLUM, MITCHELL and FELL, JJ. Reversed.

Exceptions to report of auditor.

The auditor, H. F. Hoffer, Esq., reported as follows:

### FINDINGS OF FACT.

1. James Noble died September 19, 1836, testate, having first made his will dated August 30, 1836; and the fund in hand for distribution represents the bequest of $8,000 (less expenses), bequeathed by the terms of said decedent's will to his daughter, Mary Patton, " wife of Joseph W. Patton."

2. At the date of the said will, and at the date of the testator's death, Mary, the testator's daughter, was the wife of Joseph W. Patton, and continued to be such until the death of her said husband, which occurred on October 30, 1880.

3. Mary Patton, the testator's daughter and the widow of Joseph W. Patton, died on November 26, 1895, without issue, having first made her last will and appointed her niece, Mrs. Annie V. McComas, the sole executrix thereof.

By the will of James Noble, deceased, he bequeathed, inter alia, as follows:

1897.]                    Auditor's Report.

### CLAUSE A.

"I give and bequeath to my daughter Ann Mariah, the wife of John T. Fryatt the sum of eight thousand dollars. I bequeath to Elizabeth, the wife of William Smith, the sum of eight thousand dollars. I bequeath to Margaret, the wife of Robert Snodgrass, the sum of eight thousand dollars. I bequeath to Mary, the wife of Joseph W. Patton, the sum of eight thousand dollars, which said several sums are to be paid by my three sons, John, Armstrong and Robert in four years after my decease. . . ."

### CLAUSE B.

"As to the bequest to my daughter, Margaret Snodgrass, I direct my executors to invest the same on loan or stock, as they may deem best, and pay the proceeds thereof to my daughter, for her sole and separate maintenance and that of her children during her life, and after her death, I bequeath the same to her children absolutely, her receipts for the proceeds to be taken by my executor."

### CLAUSE C.

"As to the bequest to my daughter Mary Patton, I direct that my executor shall vest it in the same way and pay the proceeds to her separate maintenance and take her separate receipt therefor."

### CLAUSE D.

"As to the bequest to my son James, I direct that it shall also be vested in the same way and the interest thereof appropriated to his necessities and those of his wife and family during his life, and after his death the same I bequeath to his children. . . ."

### CLAUSE E.

"If my daughter, Mary Patton, should die without issue then the bequest to her to go to my other daughters share and share alike, subject to the limitations and directions as are made herein as to their bequests."

5. Mrs. Margaret Snodgrass died March 31, 1888, testate, and appointed John Hays, Esq., her executor. She had issue as follows:

(1) Abbie Snodgrass, now Mrs. Newkirk, a daughter.

(2) Marcia Snodgrass, a daughter.

(3) William T. Snodgrass, a son, who died May 7, 1881, leaving to survive him a widow, Anna B. Snodgrass; and children as follows: Robert N. Snodgrass, Anna May Snodgrass, now Mrs. Reese, Blanche Alberta Snodgrass, Marcia A. Snodgrass, Margaret Snodgrass.

6. Mrs. Elizabeth Smith survives.

7. Mrs. Ann Mariah Fryatt died April 27, 1870, testate, leaving to survive her no husband, but issue as follows: Daniel Webster Fryatt, Henry C. Fryatt and James N. Fryatt. Daniel died May 12, 1885, unmarried and with no issue. Henry C. died February 15, 1890, leaving a widow, Maggie L. Fryatt, and one son, Tillottson Fryatt, about ten years old, and having no guardian. James N. Fryatt is living and unmarried.

8. Ann M. Fryatt by her last will bequeathed as follows: " I will and bequeath to James N. Fryatt a legacy which was bequeathed by my father, James Noble, to Mary Patton during her life, and after her death to be divided between my two sisters and myself, to hold during the life of my said son, Daniel W. Fryatt, and to pay him the interest upon the same annually, and after the death of my son, Daniel W. Fryatt, I give and bequeath the same to my son, James N. Fryatt, without any condition whatever."

9. James N. Fryatt by his deed made February 2, 1886, granted unto William S. Henshaw, in trust, all his interest under the will of his grandfather, James Noble, and under the will of his mother, Ann M. Fryatt.

10. Henry C. Fryatt by his deed of assignment made July 28, 1888, granted unto Anna Boarman as trustee of Maggie L. Fryatt and Tillottson Fryatt, her son, all his interest under the will of his grandfather, James Noble, and all his interest in the deed of trust made by James N. Fryatt to William S. Henshaw, in trust, and dated February 2, 1886.

11. William S. Henshaw, the trustee mentioned in the said deeds, has since died, and David C. Westenhaver has been appointed his administrator by the county court of Berkley county, West Virginia.

The auditor reports the following conclusions of law:

1. That under the law of West Virginia the administrator of a trustee becomes his successor in the trust.

(Note. For the sake of convenience in referring to the will of James Noble, the portions of it to be construed have been divided into clauses marked A, B, C, D, E.)

2. Under clause A of the will of James Noble the bequest of $8,000, to Mary, the wife of Joseph W. Patton, was absolute.

3. Under clause C of the said will, taken in connection with the other portions of the will, a separate use trust, for the protection of the testator's married daughter, Mary Patton, was created.

4. The separate use trust thus created was intended only for the protection of the wife during coverture, and the same became executed upon the discoverture of the wife by the death of her husband.

5. Upon the death of her husband in her lifetime, Mary Patton became entitled to the possession and control of the legacy thus placed in trust for coverture only, and became entitled to exercise over it all the rights of absolute ownership.

6. By the last will and testament of Mary Patton she appointed Annie V. McComas her executrix, and the latter became entitled to the possession and control of all of Mary Patton's personal property, subject to the provisions of her will.

7. Under the will of James Noble and the will of Mary Patton, the fund now in hand for distribution, being the legacy of $8,000 (less expenses), bequeathed to Mary Patton by James Noble, should be awarded to the executrix of Mary Patton; and it is so awarded.

The court, in an opinion by E. W. BIDDLE, P. J., dismissed exceptions to the auditor's report.

*Error assigned* was in dismissing exceptions to auditor's report.

*J. W. Wetzel*, with him *J. Webster Henderson* and *H. S. Stuart*, for appellant.—A different meaning attaches to the word issue in gifts of personalty from that which it bears when used in devises of realty : Myers' App., 49 Pa. 111 ; Wynch's Trusts, 17 Jur. 588 ; Keene's App., 64 Pa. 268 ; Eachus's App., 91 Pa. 105.

When an active trust is created to give effect to a well defined purpose of a testator in reference to his family, the trust

must be sustained whether the cestui que trust is sui juris or not: Rife v. Geyer, 59 Pa. 393; Barnett's App., 46 Pa. 392; Earp's App., 75 Pa. 119.

A life estate only was intended: Snyder's App., 95 Pa. 174; Still v. Spear, 3 Grant, 306; Miller's Est., 145 Pa. 561; Wallace v. Denig, 152 Pa. 251; Gerhard's Est., 160 Pa. 253.

*John Hays* and *W. F. Sadler*, for appellee.—Mrs. Patton took a separate use trust: Act of June 4, 1879, P. L. 88; Quin's Est., 144 Pa. 444; Neale's App., 104 Pa. 214; MacConnell v. Lindsay, 131 Pa. 476; Van Rensselaer v. Dunkin, 24 Pa. 252; Faries' App., 23 Pa. 29; Rank v. Rank, 120 Pa. 191; Ege v. Medlar, 82 Pa. 86; Steinmetz's Est., 168 Pa. 171.

The bequest over to the sisters in case of death without issue does not change it: Morrison v. Truby, 145 Pa. 540; Miller's Est., 145 Pa. 561; Keating v. McAdoo, 180 Pa. 5; Van Rensselaer v. Dunkin, 24 Pa. 252; Faries' App., 23 Pa. 29; Ege v. Medlar, 82 Pa. 86; Rank v. Rank, 120 Pa. 191.

The failure of issue was not to be indefinite, or definite within the lifetime of the testator, but definite within the lifetime of the husband.    This answers all purposes of the testator's intention: Neale's App., 104 Pa. 214; Phila. Trust, etc., App., 93 Pa. 209; Yarnall's App., 70 Pa. 335; Ogden's App., 70 Pa. 501.

There was no intent to cut down Mrs. Patton's interest to a life estate: Bush's App., 33 Pa. 86; Quin's Est., 144 Pa. 444; Keating v. McAdoo, 180 Pa. 5.

*J. W. Wetzel*, with him *J. Webster Henderson* and *H. S. Stuart*, for appellant in reply.—This being a gift of personalty, the use of the phrase, " should die without issue ", means to die without issue living at the death of the persons, the failure of whose issue is spoken of; Eachus's App., 91 Pa. 105; Gerhard's Est., 160 Pa. 256; Wilson v. Denig, 166 Pa. 32.

OPINION BY MR. JUSTICE MITCHELL, July 15, 1897 :

The learned auditor was of the opinion that the separate use trust created by the testator for the legacy to his daughter, Mary Patton, was intended only for her protection during coverture, and he held therefore that the legacy became hers absolutely upon the death of her husband.

But this does not give effect to the full intention of the testator. After charging the residue of his estate in the hands of three of his sons with legacies of $8,000 each to his four daughters and his son James, the will provides that "as to the bequest to my daughter Margaret I direct my executors to vest the same on loan or stock as they may deem best and pay the proceeds thereof to my daughter for her sole and separate maintenance and that of her children during her life, and after her death I bequeath the same to her children absolutely, her receipt for the proceeds to be taken by my executors. As to the bequest to my daughter Mary Patton I direct that my executors shall vest it in the same way and pay the proceeds to her separate maintenance and take her separate receipt therefor." Had the will left the subject without further expression, there would have been strong ground for the view that the testator's sole object was a separate use to protect Mary's share from her husband and his creditors, though even then it would not have been entirely free of doubt whether the words " vest it in the same way " might not have been meant to cover the estate that was to pass, as well as the mode in which it was to be invested, the intent being apparently to assimilate Mary's share generally to Margaret's, which was for life only, and the trust as to her being to preserve remainders as well as for separate use. But the testator did not leave the subject here, though he interjected at this point certain provisions as to his son James and his brother William, with which we are not concerned. But he then returns to Mary's legacy and provides that "if my daughter Mary Patton should die without issue then the bequest to her to go to my other daughters, share and share alike, subject to the limitations and directions as are made herein as in their bequests." This must be read continuously with the previous clause on the same subject directing the investment of Mary's share in the same way as Margaret's, and so read, it makes plain the testator's intention that the provision for both daughters shall be the same, to wit: a separate use for each to herself during her life, with remainder expressed to Margaret's children, a like remainder implied to Mary's children, if she should have any, and a plainly expressed devise over to her sisters upon her death without issue.

With the long line of cases which hold that after an absolute

gift, restrictions sought to be imposed upon the incidents of ownership are ineffective, or the other cases where a devise over upon the .death of the first legatee is held to mean such death in the lifetime of the testator, we have nothing to do. The whole will taken together as to the parts which relate to this legacy shows that the gift was not absolute, and the testator's intent to that effect being clear, we do not need to resort to rules of construction, nor do we get much light from what other testators may have meant by more or less similar language used under different circumstances or in different connection. It is therefore unnecessary to discuss the numerous cases cited by both parties in their arguments.

Decree reversed with costs and distribution directed to be made in accordance with this opinion.