## Murray's Estate.

Argued October 9, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

360

*Ralph D. McKee,* with him *George E. Alter,* of *Alter, Wright & Barron* and *George M. Swan,* for appellant.

*S. M. Hazlett,* with him *Edward J. I. Gannon* and *Charles P. Walter,* of *Hazlett, Gannon & Walter,* for appellee.

PER CURIAM, November 27, 1933:

Harry C. Magraw [McGraw] has appealed from a decree of the Orphans' Court of Allegheny County dismissing his exceptions to the decree of distribution entered on the final account of a testamentary trustee under the will of Eveline Murray. The following are the most salient of the facts submitted to the court below under an agreed statement.

Testatrix died September 8, 1883. By her will she established a separate use trust of real estate owned by her, directing that the income should be paid to her daughter Louisa Magraw for life. She further provided that, at the death of her daughter, the trust should continue in equal shares for the benefit of Bartram and Harry Magraw, sons of Louisa. The instrument directed that the one-half interest of Harry be conveyed to him when he became of full age, but continued the trust as to Bartram during his lifetime. The will then pro-

vided: "and should the said Bartram die during the life-
time of said Harry his brother then to grant said Bar-
tram's moiety to him said Harry. And in trust further
if said Bartram and Harry die without children surviv-
ing them then to the heirs of their mother Louisa her
heirs......" It is the interpretation of the clauses just
quoted which gives rise to the present controversy.

Louisa died September 18, 1890. Harry Magraw, who
is still living, reached his majority many years ago and
at that time received a conveyance of his half of his
grandmother's estate. Bartram died January 12, 1933,
and the contest over his share, held in trust during his
lifetime, is between his children and Harry. The court
below decided the issue in favor of the children of Bar-
tram and we see no reason to disturb the decree so en-
tered.

Appellant contends that Bartram's interest was but
a life estate which, by the terms of the will, was to pass
to Harry on his brother's death, and further asserts that
the intention of testatrix is so clear and unequivocal
that no doubt may be cast upon the gift over to Harry
by subsequent ambiguous terms in the will. To reach
appellant's conclusion we must necessarily disregard the
phraseology of the latter of the two portions of the will
quoted above, for the obvious implication of the clause
which reads, "And in trust further if said Bartram and
Harry die without children surviving them then to the
heirs of their mother Louisa, her heirs," is that Harry is
to take Bartram's share only if the latter dies without
children. Appellant attempts to escape from this con-
struction by arguing that the clause just mentioned was
inserted to cover the contingency that Harry might die
in the lifetime of Bartram and to provide for the ulti-
mate distribution of both shares. But there again, if
testatrix intended Bartram's interest to terminate at his
death, in providing for the possible death of Harry be-
fore Bartram, the gift over to the heirs of Louisa would
not be predicated upon the death of Bartram without

children surviving him. Plainly, by the language of the will, Bartram's share would pass to his children if Harry predeceased him. We cannot presume that testatrix desired to disinherit Bartram's children if Harry outlived Bartram, and not otherwise. The will was written many years ago when the two brothers were but children. The grandmother could not have had any prejudice against their then unborn offspring. The natural and equitable interpretation of this testamentary paper indicates that Harry was to receive Bartram's share if the latter died before his brother without children surviving him. Testatrix also contemplated that if Harry died before Bartram, the share of the latter was to revert to the heirs of Louisa, their mother, in default of surviving issue of either brother.

No other construction will give effect to every part of the instrument and it is well established that a will must be construed as a whole and so that all its provisions may take effect. In addition, the construction not only must avoid inconsistencies, if possible, but also must not disinherit an heir, except where required by plain words or necessary implication: Moore's Est., 241 Pa. 253. See also Patton's Est., 268 Pa. 367, and cases there cited. "In arriving at the intent of the [testatrix] we must seek to give effect to every part of the will and give harmony to the whole instrument": McDevitt's App., 113 Pa. 103, 107.

The decree of the court below is affirmed at appellant's cost.