Rouse Estate.

Argued January 16, 1952. Before DREW, C. J., STERN, STEARNE, BELL, CHIDSEY and MUSMANNO, JJ.

*Thomas B. K. Ringe,* with him *Richard P. Brown, Jr., Carl H. Anderson, George C. Klauder* and *Morgan, Lewis & Bockius,* for appellant.

*Henry S. Drinker,* with him *Anna Frank Dawson, John A. Ballard* and *J. Horace Churchman,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 24, 1952:

This appeal relates to a will construction. The question is whether there is an *implied gift* of corpus to testator's two minor great-grandchildren or whether there is a partial *intestacy.* Appellant is the widow of testator's grandson (claiming as executrix under the will of her husband, the grandson, and in her individual right), and appellees are the testamentary guardians of her two minor children. The Orphans' Court of Philadelphia County decreed that the corpus amounting to $1,222,123.53 passed to the minor children. The appeal followed.

Josiah G. Rouse, testator, died February 21, 1926. His will, which was duly probated, is dated June 2, 1903. At his death his grandson, Josiah Rouse Burns, was his sole heir.

By the will testator placed the residue of his estate in trust. The dispositive provisions relating to his

residuary estate are contained in the sixth item, which he divided into four numbered clauses. The first clause relates to the care of the cemetery lot, while the second has to do with the maintenance of the family home during the widow's life, neither of which affect the present appeal.

The objects of testator's bounty as specified in clauses three and four are: his wife, Sabra G. Rouse; his wife's sister, Julia Swanton; his grandson, Josiah Rouse Burns; his grandson's "child or children or issue of deceased child or children" (hereafter termed issue) and the Grand Lodge of Free and Accepted Masons of the Jurisdiction of Pennsylvania (hereafter termed Masonic Lodge).

The testamentary scheme, for the present purpose, may be summarized as follows: the trustees were directed to divide the *net income* into eight equal parts; his wife Sabra was given the income from six of the eight shares for life; the sister-in-law Julia was given the income from one of the eight shares for her life; and the remaining eighth share of income was given to the grandson, Josiah Rouse Burns, for his life. Testator contemplated and provided against the deaths of his wife, his sister-in-law and grandson in their various lifetimes, as well as the death of the grandson with and without leaving issue. We need not recite in detail these elaborate testamentary provisions. Testator's wife and sister-in-law predeceased him. *The grandson survived and received the entire net income until his decease on September 19, 1949.* The grandson left issue, two minor children, the appellees. He died testate and, as above stated, his widow (appellant) claims seven-eighths share of the corpus, as executrix and in her individual right.

It is apparent what disposition testator *intended* concerning the corpus of the residuary trust estate fol-

lowing the decease of the grandson. The narrow question is whether the words which he employed *accomplished* such purpose.

As to one-eighth share there is no question. Upon the death of the grandson, the life tenant, the remainder is given to his *"child or children and issue of deceased child or children then living."*

As testator's sister-in-law Julia predeceased him, the *income* on the eighth share given to her was bequeathed and was paid to the grandson for life. It was only in case the grandson died in the lifetime of Julia that the grandson's issue were given the corpus of *this* share. As this event did not occur we need not consider other provisions respecting this share.

By the fourth clause testator provided for the disposition of the *corpus* of the remaining shares of the residuary trust estate in the event that the grandson survived testator's wife and sister-in-law. He employed the following language: "In the event of my said grandson, Josiah Rouse Burns, surviving my said wife and the said Julia Swanton [which he did] and then dying without leaving child or children or issue of deceased child or children him surviving . . . to the [Masonic Lodge]. . . ."

It is a well established canon of will construction that where there is a gift to A for life, and if A dies without issue then to B, this constitutes an implied gift to A's issue, should A leave any such issue: *Estate of James Noble,* 182 Pa. 188, 37. A. 852; *Beilstein v. Beilstein,* 194 Pa. 152, 45 A. 73; *Lippincott's Estate,* 276 Pa. 283, 120 A. 136; *List's Estate,* 283 Pa. 255, 129 A. 64; *Clayton's Estate,* 302 Pa. 468, 153 A. 742; *Murray's Estate,* 313 Pa. 359, 169 A. 103; *Cope Estate,* 353 Pa. 306, 45 A. 2d 52; *Africa Estate,* 359 Pa. 567, 59 A. 2d 925. It is upon this principle that the guardians of the minor children claim the corpus, and upon which

it was awarded to them by the court below. The executrix under the will of the grandson, who was testator's sole heir, contends, upon the contrary, that such gift being merely *implied,* constitutes but an *inference* or *presumption,* which may be rebutted as any other presumption. Regarding the will from its four corners, it is urged that such presumption is rebutted and that an *intestacy* results. To rebut such *implied* gift, appellant points to the fact that when testator devised and bequeathed a one-eighth share of the corpus to such children he did so *by a specific grant to the children or their issue in plain and unequivocal language.* Also he employed the same language in two other instances in case of the death of the grandson *leaving issue* (1) prior to the death of testator's wife and (2) prior to the death of the sister-in-law. It is therefore urged with great vigor that when testator devised and bequeathed the seven-eighths share of the corpus he gave it to the Masonic Lodge only in the event that the grandson left *no issue*; that he made no gift to issue in case the grandson *left issue.* Because of the absence of such express grant to the issue, it is urged that this constituted an omission, which was either *intentional or accidental,* which in either case resulted in an intestacy.

First considering whether there was an *intentional* omission, resulting in intestacy, there is a presumption testator intends to dispose of his whole estate. Such presumption, however, is met by an equally potent presumption that an heir is not to be disinherited except by plain words or necessary implication. The effect of the conflict of rules is well stated by Judge HUNTER in his Pennsylvania Orphans' Court Commonplace Book, Vol. 2, Wills, sec. 4 (b) p. 1436, in the following language: "These presumptions are of like force and effect, and in applying one we must not overlook the other. Neither presumption, however, can be permitted to defeat the

intention of the testator which is expressed in apt words or appears by clear implication." See *Grothe's Estate,* 229 Pa. 186, 78 A. 88; *French's Estate,* 292 Pa. 37, 140 A. 549; *Loving Estate,* 159 Pa. Superior Ct. 339, 48 A. 2d 39. This language does not reveal an express intent by testator to die intestate as to this portion of the trust corpus.

We do not subscribe to the *conjecture* of the court in banc that "the balance of express language as to the event which occurred was an oversight of the scrivener." If there were an *omission,* such omission might not be remedied by judicial construction. In *Grothe's Estate,* supra, Justice MESTREZAT said, p. 192: ". . . if it was an oversight, the courts have no authority to insert a provision . . . under the assumption that it was the intention of the testator. It is only when the language of the will expressly or by clear implication discloses the intention of the testator that the courts may carry it out. It will not do for the courts to undertake to guess at the intention of a testator and declare that to be his will. If he sees fit for any reason not to dispose of any part of his estate, or such is the result of ignorance or oversight, the courts cannot supply the gap or hiatus and reconstruct the will. To do so would be a perversion of the functions of the court, and deprive a testator of the right to dispose of his property." See: *Morrison Will,* 361 Pa. 419, 65 A. 2d 384, and cases therein cited.

As we construe this will, there is no sound basis for the contention that there was an omission which was either intentional or accidental. A testator is not required to employ the same words or use the same phraseology in expressing the same testamentary design, even in the same document. In devising and bequeathing the one-eighth share the grandson and his children were the sole objects of testator's considera-

tion. The same exclusive consideration is apparent when he contemplated the possibility of his grandson pre-deceasing testator's wife and sister-in-law. However, when testator was disposing of the seven-eighths share, he was not only considering the grandson and his issue but he was also providing for his wife and sister-in-law. It was only in this connection that testator contemplated the possibility of his grandson dying without issue. In that event, but in that event only, did he pass the corpus to the Masonic Lodge. It would, of course, have removed all possible doubt had testator said in unambiguous language that upon the death of the grandson, his children or their issue should take the remainder, but if the grandson left no such children, then the corpus should pass to the Masonic Lodge. We see no difference in the use of the language which testator did employ in so expressing his intent. Such testamentary provision discloses a clear and unequivocal implication, which is not substantially rebutted, that testator passed the entire residuary trust estate to the children and issue of his grandson-life tenant. There is no other language in the will which could be fairly held to demonstrate a contrary intent. We agree with the court below that *Cope Estate,* 353 Pa. 306, 45 A. 2d 52, rules the present will construction.

Decree affirmed. Costs to be paid from the estate.