**Pearson Estate**

*Charles B. Zwally,* for accountant.

*James H. Stewart* and *Robert J. Woodside,* for exceptants.

*Charles A. Woods, Jr.,* Deputy Attorney General and *William C. Sennett,* Attorney General, for Commonwealth.

*Bruce E. Cooper,* for guardian and trustee ad litem.

SWOPE, P. J., September 25, 1968.—This matter comes before us on objections to the first and partial account in the Estate of Robert Pearson, who died a resident of Dauphin County, on July 27, 1967, leaving a holograph entitled "Will and Testimony," dated January 7, 1958, which thereafter was duly admitted to probate.

On March 8, 1968, the Dauphin Deposit Trust Company of Harrisburg, pursuant to its appointment as administrator c. t. a. of the above estate, filed its first and partial account and petition for distribution in which it requested this court to dispose of certain questions concerning the interpretation of testator's will. On March 20, 1968, a guardian and trustee ad litem for minor and unborn beneficiaries was appointed upon the petition of the administrator. Notice of audit of the first and partial account was given to all parties in interest in which were set forth the administrator's suggestions as to the solution of the questions to be adjudicated. Various and separate objections to these suggestions and the account have been advanced on behalf of testator's brothers and sis-

ters, the North Dakota State University, the Attorney General of Pennsylvania and the guardian and trustee ad litem for the minor and unborn beneficiaries.

At this juncture, we are called upon to determine principally two questions. Initially, we must decide whether the existence of valid life estates as established by decedent's testament will preclude the court from any present determination as to the validity of succeeding life and remainder interests similarly provided. The second question must await a resolution of the first. If we determine that the validity of the subsequent interests is a matter which is presently ripe for decision, we must then decide which of them, if any, are violative of the rule against perpetuities.

Ordinarily, a court will not determine the validity of a remainder interest of a trust while a valid prior life estate is extant: Quigley's Estate, 329 Pa. 281. Under this view, prior bequests remain valid and will not be disturbed until the expiration of the period required by the rule, at which time such interests as have then not yet vested will be voided. This view, in fact, has been accorded statutory provision in the Estates Act of April 24, 1947, P. L. 100, sec. 4, 20 PS §301.4, which provides, in part:

"(b) Void interest-exceptions. Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events any interest not then vested and any interest in members of a class the membership of which is then subject to increase shall be void."

The commission's comment at the end of this section provides, in part:

"Subsec. (b). This subsection is intended to disturb the common law rule as little as possible, but to make actualities at the end of the period, rather than possibilities as of the creation of the interest, govern . . ."

This section, along with the comment, is popularly known as the "wait and see" doctrine.

There are circumstances, however, which have been held sufficient to permit a court to disregard the "wait and see" doctrine and to proceed to a determination as to the validity of succeeding interests even though such determination is made prior to the expiration of the period of the rule. We are of the opinion that such circumstances exist in the instant case. Under the will in question, certain remainder interests are provided for specific charities. The eligibility of these charities to take provides a pressing and immediate question for determination, since the extent of their taking will necessarily affect the tax liability of the estate. If no charitable deduction is taken at this time, the estate may effectively lose its right thereto even though it may subsequently appear that it was a deduction to which the estate was rightfully entitled from the outset. This situation is strikingly similar to the facts of Miller Trust, 48 D. & C. 659, in which the court recognized that it would have been required to defer passing upon the validity of the remainder interest "had it not been for the reason that the Federal Goverment is claiming both estate and gift taxes . . . and a postponement of the determination of the questions involved until the termination of the life estates . . . would necessitate tax contributions forthwith to the Federal Government which may not be recoverable at a later date, if improperly paid at this time." In this regard, we are also persuaded by the recent opinion in Carter Estate, 44 D. & C. 2d 509.

Having determined, as we do, that there is sufficient cause to justify a present decision as to the validity of the remainder interests provided by decedent, we must proceed to an examination of the provisions of his will, since the effect of the rule against perpetuities can only be determined with re-

ference to a specific interpretation to be given to the testamentary language here involved.

We remind ourselves of the basic principle that a will must be construed according to the intention of the testator. Thus, it is said that the testator's intent is the polestar in the construction of a will: Lander Estate, 416 Pa. 605. Concomitantly, we must, if at all possible, ascertain the meaning of a will from its language alone, without reference to the various canons of construction: Grier Estate, 403 Pa. 517. We are of the opinion that this may here be done. Our reading of the instant will persuades us that testator's intent may be divined solely from the plain meaning of his words without need for reference to any artificial rules.

The controversy in the case at hand revolves around the second paragraph of the will. This paragraph provides that "It is my hope and prayer, that my estate, or the proceeds of my estate, be placed in trust for the benefit of the legal heirs, entitled to succeed to my estate."

Two questions arise out of this paragraph. The first entails the effect to be given to the use of the words "hope and prayer" in the creation of a trust. We are not persuaded that the use of such words invalidates the existence of an otherwise valid trust. While such words do not in and of themselves amount to a direction, they nevertheless do connote "the imposition of enforceable duties and partake of a command": Walker Estate, 21 D. & C. 2d 512. Moreover, "(w) here such words are used 'in direct reference to the estate, they are prima facie testamentary and imperative, and not precatory'": Calder Estate, 343 Pa. 30. As was said in Brubaker v. Lauver, 322 Pa. 461, "The test is, whether the precatory expression was used in a mandatory sense, though couched in a mild, polite, courteous command. . . ." We conclude that

the employment of these words by testator imports a direction to which this court must give effect.

The second of the problems lies in determining those whom our testator intended to include in the category "legal heirs entitled to succeed to my estate." We do not conceive ourselves bound in this case by that rule of construction which provides that a devise or bequest to one's designated "heirs" means to those persons who would take under the intestate laws if testator had died intestate (Wills Act of April 24, 1947, P. L. 89, sec. 14(4), 20 PS §180. 14(4)); in this case, testator's brothers and sisters. Such a construction is warranted only in the absence of a contrary intention appearing in the will, and we believe that reference to other paragraphs in Pearson's will discloses such an intention.

In paragraph three, testator directs that "the proceeds of my estate be placed in a Trust Fund, . . . and administered throughout the life and period of the Estate, *as long as there are living heirs.* The heirs or beneficiary to share the income from the Trust Fund." (Italics supplied.)

The phrase "as long as there are living heirs," taken from the four corners of the will, suggests that testator did nor intend to limit the beneficiaries to his brothers and sisters alone, but rather to provide trust income to his heirs ad infinitum. This concludion is bolstered by reference to paragraph four of the will. In that paragraph, testator directs:

"The rate or partition shall be apportioned according to the number of living nephews and neices (sic), and thereafter equally proportioned to the surviving heirs. There shall be an exception provided in the aforestated declaration, in the event of special hardships. *The first apportionment* of the income from the Trust Fund shall accrue to the benefit of the brothers and sisters, during their life." (Italics supplied.)

The phrase "first apportionment," it would seem reasonably, must be defined to mean "first in time," thereby indicating that there were to be income distributions following the deaths of the brothers and sisters. Further, while speaking of the rate of apportionment and after referring to his nephews and nieces, testator directs that the income from the trust is "*thereafter* (to be) equally proportioned to the surviving heirs." (Italics and parenthesis supplied.)

This choice of language indicates clearly that testator intended a continuing distribution from the trust, and, when read in conjunction with the other pertinent provisions, to which we have previously adverted, can only mean until the death of his last collateral descendant.

Having determined that testator intended to provide income from the trust to his collateral descendants indefinitely, it becomes incumbent upon the court to determine the manner in which the trust income shall be distributed among the income beneficiaries. We are mindful that in this regard testator's intention is again the paramount consideration.

Ordinarily, in the absence of a contrary intent, the courts prefer a per capita distribution: Campbell Estate, 395 Pa. 395. However, as the court pointed out in Campbell: "Even a very faint glimpse in the context would work a different result." It is our conclusion that the instant will provides more than a mere glimpse of a contrary intent which, by its very occurrence, must be given effect. According to the last sentence of paragraph four of the will, "(t)he first apportionment of the income from the Trust Fund shall accrue to the benefit of the brothers and sisters, during their life." The first sentence of this same paragraph directs that "(t)he rate or partition shall be apportioned according to the number of living nephews and neices (sic), and thereafter equally proportioned to

the surviving heirs." Given their plain meaning, these sentences initially direct a division of the trust income into as many shares as there are nephews and nieces living at the time of testator's death, which shares must then first be apportioned among testator's brothers and sisters for life, this apportionment, in accordance with the "rate or partition" provided in the first sentence of the same paragraph, to be according to the number of their children. Upon the respective deaths of the brothers and sisters of decedent, their shares would thereafter be distributed in equal proportion to their surviving children for their lives or to the heirs of any deceased child, and finally to their descendants indefinitely. This plan of distribution establishes clearly testator's primary intention to provide a division of trust income from the outset of the trust, which would ultimately guarantee an equal benefit for each of his nephews and nieces and their descendants. By using their number at the time of his death as the measure of division, testator assures to each of them indirectly his or her per capita share of the estate as though the first distribution were being made directly to them. Testator postpones their enjoyment, however, by first permitting their parents, who are his brothers and sisters, to themselves receive a life interest in the trust income equal to the sum total of the shares attributable to each nephew or niece of whom he or she is the parent.

We are fully cognizant that this interpretation necessarily excludes testator's sister, Mrs. Richard C. Leonard, from sharing in the trust income. Having been childless at the time of testator's death, Mrs. Leonard would be entitled to no shares of the income as apportioned. We note, however, that testator provided in paragraph five of his will that "(t)he first administratrix shall be Mrs. Richard C. Leonard (Clara Theresa Pearson)." This appointment, even though,

in fact, renounced by her, appears to have constituted an attempt by her brother, without disturbing his meticulously drawn plan, to include her in his will, nevertheless, by entitling her to fees and commissions directly from the estate to an extent equalling or surpassing the share of income which would be enjoyed by any of the life beneficiaries, a result which we feel permits us to depart from the recognized rule that a will ordinarily will not be construed to disinherit one who would otherwise take: Murray's Estate, 313 Pa. 359.

Having concluded that the will provides that trust income is to be enjoyed by testator's brothers and sisters for and during their lifetimes, thereafter to his nephews and nieces for and during their lifetimes and ultimately to his grandnephews and grandnieces for and during their lifetimes, etc., so long as any descendants of testator remain, we must now determine the effect of the rule against perpetuities upon such interests.

The classical statement of the rule is that "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest": Gray, The Rule Against Perpetuities, §201 (4th ed., 1942). In light of this statement, it is our conclusion that the interests both of testator's brothers and sisters and of his nephews and nieces may stand. The gift of income to the brothers and sisters is to definite and ascertained persons, is subject to no condition precedent, and, therefore, was vested at the time of testator's death. Similarly, the interest to the nephews and nieces is valid, even though it may not have vested at testator's death, and even though it may be a gift to a class which is subject to increase, rendering the number and size of the shares, therefore, contingent (Gray, §101), since this interest will, nevertheless, vest upon the death of tes-

tator's brothers and sisters, which lives were in being at the time of the creation of the interest and, accordingly, there is no violation of the rule.

The result is different, however, with respect to the grandnephews and grandnieces and to the following life interests to testator's descendants ad infinitum. Applying the rule at this time, as we have determined it is proper to do, we cannot say with certainty that these interests will vest within a 21-year period after the termination of a life in being which existed at the time of testator's death. With regard to the grandnephews and grandnieces, their interest is clearly contingent, since the size of their class is yet indefinite and it cannot now be said with certainty that it will not remain so after the period of the rule has expired. See Ledwith v. Hurst, 284 Pa. 94. The same is true for the interests of the descendants who would otherwise take after termination of the interests of the grandnephews and grandnieces.

With regard to the ultimate remainders, after fulfillment of the life estates, testator directs in paragraph seven of his will that once the trust is terminated, the remainder is to go to certain charitable institutions. In the following paragraph eight, testator specifies that these charities are the Agricultural College of North Dakota, the Lutheran Church and another charity of a permanent nature in memory of his wife. We conclude that these remainders are violative of the rule against perpetuities and that they are, therefore, void.

A gift over in remainder for charitable purposes is not necessarily rendered invalid merely because prior noncharitable interests are held to be in violation of the rule against perpetuities. Such a gift will be upheld if the gift to charity vests. if at all, within the period of the rule. The gift over is valid if it is from the outset a vested gift: Gageby Estate, 293 Pa. 109.

The result is different, however, where the gift is itself subject to a remote and conditional limitation: Penrose Estate, 257 Pa. 231. In such cases, the remainder is rendered nugatory not by virtue of any transference of the same taint which rendered the prior interests invalid, but rather because the remainder itself suffers from a unique element of contingency which is peculiar to it alone. In the instant case, the remainder to charities is to take place "(w)hen the Trust Fund has fulfilled its obligations to the heirs. . . ," which has been interpreted to mean the expiration of testator's collateral descendants. This final extinction is an uncertain fact, the time of which cannot presently be foretold. A gift of principal in remainder, based on such a "dubious and uncertain event," is clearly a contingent remainder and must fall: Lockhart Estate, 26 D. & C. 2d 701. Nor will such a void remainder be validated merely because the beneficiary is a charity. Lockhart Estate, supra, at page 705.

We conclude, therefore, that the proposed distribution of trust income after the extinction of testator's nephews and nieces, along with the gift over in remainder to the named charities, are violative of the rule against perpetuities and, hence, are void. We conclude further that as to these interests testator died intestate and, accordingly, upon the death of testator's last surviving nephew or niece, the corpus of the trust shall be distributed under the laws of intestate succession.

Accordingly, we make the following

### ORDER

And now, September 25, 1968, the exceptions to the first and partial account and petition for distribution of the administrator c.t.a., filed on behalf of Alma Burman, Clara Leonard, Lillian Simpson, Charles H. L.

Pearson, Bernard H. Pearson, North Dakota State University, the Attorney General of Pennsylvania, and Bruce E. Cooper, guardian and trustee ad litem, are dismissed each and severally. The administrator c.t.a. is directed to prepare and submit to the court a revised suggested schedule of distribution in accordance with this opinion unless exceptions are filed hereto within 10 days of the date of this order.